**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RENETRICE R. PIERRE, individually and | ) | |
| on behalf of others similarly situated, | ) | |
| Plaintiff, | ) | No. 16 C 2895 |
| | ) | |
| v. | ) | Judge Leinenweber |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | Magistrate Valdez |
| a Kansas corporation, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
HER SECOND MOTION FOR CLASS CERTIFICATION[1]**

---

[1] In its response, Defendant raises the specter of Plaintiff not having Article III standing, though Defendant has not moved to dismiss the case, instead raising it as a defense to class certification. *See* Defendant's Opposition to Plaintiff's Second Motion for Class Certification ("Response") [DE 46], at pp. 17-18 ("Plaintiff may well lack standing…. The Seventh Circuit's recent *Meyers* decision makes this issue a required threshold determination to be made by this Court prior to class certification."). Plaintiff has standing. *See e.g.*, *Paz v. Portfolio Recovery Associates, LLC*, no. 15 C 5073, 2016 WL 6833932, at *2-3 (N.D. Ill. Nov. 21, 2016) (rejecting Article III argument raised by Defendant's counsel in another case and granting summary judgment to plaintiff); *see also Long v. Fenton & McGarvey Law Firm P.S.C.*, no. 1:15-cv-01924-LJM-DKL, 2016 WL 7179367, at *3 (S.D. Ind. Dec. 9, 2016). If the Court has any concern about Plaintiff's standing, Plaintiff agrees that this Court must determine standing prior to class certification.

**Introduction**

Defendant Midland Credit Management, Inc.'s ("Defendant") certainly took a kitchen sink approach to opposing Plaintiff Renetrice R. Pierre's ("Plaintiff") Second Motion for Class Certification [DE 31] ("Motion"), but it rests upon arguments that are unsupported by law and/or fact or that have been rejected by several courts. For example, Defendant argues that many class members are subject to mandatory arbitration, including "sample" unauthenticated account agreements, but it fails to tie any documents to itself (as opposed to a sister entity), Plaintiff or any class member. Furthermore, the samples are dated outside the relevant time frame.

Defendant's claim that the proposed class definition is drastically different than it was at the beginning of the case is remarkable, because Defendant itself provided the definition in discovery responses and attested that it covered the very people Plaintiff has sought to represent since the inception of this case.

Plaintiff has submitted actual support for its Motion, primarily composed of Defendant's own testimony and discovery responses. Most importantly, the proposed class is comprised of 68,754 people, already identified by Defendant, using an objective definition, who got an identical letter from Defendant. Because the case is premised on identical representations by Defendant, and any potential liability arises solely from the identical letters, Plaintiff's claim is typical of, and in common with, class claims. Undoubtedly, common issues predominate because all issues arise from an identical letter, and a determination of whether Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), will apply universally to all class members. Accordingly, this Court should certify the proposed class as requested.

1

<u>Legal Discussion</u>

**I.      PLAINTIFF OBJECTIVELY MEETS ALL REQUIREMENTS OF RULE 23.**

Defendant raises issues to "muddy the waters" and hope something sticks, and Plaintiff will address those unsupported and rejected arguments below, but the starting point is that Plaintiff objectively meets all Rule 23(b)(3) class certification requirements.

According to Defendant itself, Defendant sent an identical letter with the allegedly-violating content to Plaintiff and 68,754 people in Illinois.  *See* Deposition of Shanna Carson, Defendant's Rule 30(b)(6) designee, ("30(b)(6) Dep."), **Exhibit A** hereto, at 90:6-9, 16-20; 93:7-11.  Disposition of Plaintiff's claims will apply universally to all class members, because they all arise out of that letter.  Regardless of the merits, Plaintiff and each class member have identical claims premised on the uniform conduct of Defendant.  As such, this Court should certify the proposed class.[2]

**II.     PLAINTIFF DID NOT ELIMINATE THE CLASS BY AMENDING HER COMPLAINT OR THE CLASS DEFINITION.**

The proposed class has always included the same 68,754 people, but Plaintiff modified the class definition to reflect Defendant's description of those people.  Focusing on the use of different words to describe the same people, Defendants parlays its own wordsmithing into various arguments, the crux of which is that the change amounts to a whole new claim that is now barred by the statute of limitations.  *See* Response, at pp. 8, 13.

Fortunately, this Court need only review one of its own decisions to reject the argument and virtually all others raised by Defendant.  In *Pawelczak v. Financial Recovery Services, Inc.*,

---

[2] In *Nepomuceno v. Midland Credit Management, Inc.*, no. 14-05719-SDW-SCM, 2016 WL 3392299, at *4, 5 (D.N.J. June 13, 2016), in certifying a class, the court rejected Defendant's same arguments raised here, including its ascertainability and arbitration arguments).

286 F.R.D. 381 (N.D. Ill. 2012) (Leinenweber, J.), the defendant, represented by Defendant's attorney here, opposed class certification on many of the same grounds raised here, all of which this Court rightly rejected. In particular, this Court rejected an argument that an amendment, premised on an identical FDCPA collection call, did not relate back to the original filing, which would eliminate the class claims as being beyond the one year FDCPA statute of limitations). *Id.* at 388 (*citing Selburg v. Virtuoso Sourcing Group, LLC*, 2012 WL 4514152, at *4-6 (S.D. Ind. Sept. 29, 2012), in which the court held that amending a complaint to add class allegations, premised on the same debt collection letter as the plaintiff received but were not originally included, related back to the original filing).

### A. Defendant Defined The Class And Has Always Known Who The Class Members Are.

"An amendment to a pleading relates back to the date of the original pleading when…the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1). The critical inquiry is "whether the opposing party has been put on notice about the claim or defense raised in the amended pleading." *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 933 (9th Cir. 2007); *cf. Knudsen v. Liberty Mut. Ins. Co.*, 435 F.3d 755, 758 (7th Cir. 2006) (adding a novel claim to an existing case will not relate back). A statute of limitations will be tolled when commencement of a class action "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 555 (1974).

Defendant argues that the currently-proposed class definition diverges so much from the original Complaint that it cannot relate back to the filing of this case. Therefore, Defendant argues,

many class members' claims are time-barred. *See* Response, at pp. 8, 13. Defendant's argument is, charitably, disingenuous. As evidenced by Defendant's own discovery responses and deposition testimony, the current definition encompasses exactly the class members as did the original definition.

The original definition was as follows:

> All persons with Illinois addresses to whom Midland Credit Management, Inc. sent a letter seeking to collect a time-barred debt that failed to disclose that the alleged debtor could not be sued for the alleged debt, failed to disclose that even a partial payment would revive the ability to sue on the alleged debt and failed to disclose that the alleged debtor had the option not to pay the alleged debt.

*See* Complaint [DE 1], at ¶ 21.

The Amended Complaint included the following definition:

> All persons with Illinois addresses to whom Midland Credit Management, Inc. sent a letter seeking to collect a time-barred debt that failed to disclose that the alleged debtor could not be sued for the alleged debt, failed to disclose that even a partial payment would revive the ability to sue on the alleged debt, failed to disclose that the alleged debtor had the option not to pay the alleged debt and failed to disclose that the letter was from a debt collector.

*See* Amended Complaint [DE 20], at ¶ 19.

In response to an interrogatory requesting that Defendant

> State the number of Letters You sent to putative class members (as defined in paragraphs 19 of the Amended Complaint) from March 7, 2015 through March 7, 2016[,]

Defendant answered as follows:

> Defendant states that it estimates that between March 7, 2015, and March 7, 2016, it sent approximately 68,754 letters to persons with Illinois addresses which contained the following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and payment or non-payment will not affect your credit score."

4

*See* Defendant's Answers to Plaintiff's Second Set of Interrogatories (Exhibit B to Motion), at no. 21. Notwithstanding its argument that the definitions "diverge so much that the putative members of the SAC class definition are entirely different from the putative class members of the original Complaint or FAC class definitions," *see* Response, at p. 8, Defendant itself acknowledged that the currently-proposed definition covers the exact same 68,754 people, well more than the zero Defendant claims. If the definitions "diverge entirely," then Defendant answered the interrogatory falsely and should not be rewarded for doing so. Plaintiff appropriately modified the class definition according to Defendant's own answer clearly suggesting that the definitions were synonymous.

In line with Rule 15(c)(1)(B), regardless of which iteration of complaint, Plaintiff's and the class members' claims "arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading." A review of the allegations, aside from the class definition, demonstrates that the claims all arise from an identical letter. *See* Complaint [DE 1], at ¶¶ 8, 11, 12, 13, 14, 15, 16, 24, 27, 28, 29; *see also* Second Amended Complaint [DE 40], at ¶¶ 8, 11, 12, 13, 14, 15, 16, 21, 25, 27, 29.

> **B.    Defendant's Fail-Safe Argument Is Baseless.**

A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). As a corollary argument, Defendant contends that Plaintiff's original class definition was "fail-safe," but because the current one is not demonstrates the "divergence" of class definitions. *See* Response, at pp. 10-11.

Defendant is wrong. The original definition references a lack of disclosures, *see* Complaint [DE 1], at ¶ 21, but a merits determination is not required to ascertain members, because a trier of fact may determine that none of those disclosures was required. As such, the people who did not get the disclosures (the 68,754 people Defendant acknowledges) may win or lose.[3]

Regardless, despite citing *Messner*, Defendant omitted a critical passage from the case:

> Defining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.

669 F.3d at 825. As evidenced by the pleading evolution here, all Plaintiff did was refine the class definition to mimic *Defendant's* definition. Therefore, even if the original definition were fail-safe, class certification is still appropriate.

## III.   RANDOM ARBITRATION PROVISIONS HAVE NO IMPACT ON THIS CASE.

"A class is identifiable if class members can be ascertained based on objective criteria." *Pawelczak*, 286 F.R.D. at 385. Defendant points to numerous arbitration provisions to argue that the class is not ascertainable and that individual issues predominate over common issues. *See* Response, at pp. 5-7, 18, Exhibit B. Defendant's argument is a red herring and does not preclude certification.

### A.   The Class Is Objectively Ascertainable.

Plaintiff's proposed class definition is as follows:

---

[3] Defendant has improperly made merits arguments that are not necessary to assess class certification. Regardless, several courts have rejected Defendant's merits arguments. *See e.g.*, *Smothers v. Midland Credit Management, Inc.*, no. 16-2202-CM, 2016 WL 7485686 (D. Kan. Dec. 29, 2016) (granting summary judgment for plaintiff based on same text at issue here); *Baez v. LTD Fin. Servs., L.P.*, no. 6:15-cv-1043-Orl-40TBS, 2017 WL 397537 (M.D. Fla. Jan. 30, 2017) (denying defense summary judgment based on virtually identical text at issue here). If this Court deems a merits analysis necessary, Plaintiff requests the opportunity to supplement the record.

> All persons with Illinois addresses to whom Midland Credit Management, Inc. sent, from March 7, 2015 through March 7, 2016, a letter containing the following statement:  "The law limits how long you can be sued on a debt.  Because of the age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and payment or non-payment will not affect your credit score."

*See* Motion, at p. 3.

> Defendant attested as follows:

> > Defendant states that it estimates that between March 7, 2015, and March 7, 2016, it sent approximately 68,754 letters to persons with Illinois addresses which contained the following statement:  "The law limits how long you can be sued on a debt.  Because of the age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and payment or non-payment will not affect your credit score."

*See* Motion, at Exhibit B, ¶ 21 [DE 31-2].  In its 30(b)(6) deposition, Defendant clarified that it sent letters to 68,754 people, not that it sent 68,754 letters.  *See* 30(b)(6) Dep., at 93:7-11.

In any event, we can ascertain who class members are by looking them up in Defendant's computer system.  *Id*. at 93:16-23; 94:5-9 (acknowledging that Defendant has contact information, which gets updated, for each letter recipient).  *See Blandina v. Midland Funding, LLC*, 303 F.R.D. 245, 250 (E.D. Pa.) (certifying class against Defendant's sister company, rejecting ascertainability argument because the defendant acknowledged in discovery that it can, and did, identify more than 68,000 class members by reviewing its records); *see also Nepomuceno*, 2016 WL 3392299, at *3 (class ascertainable because definition uses objective criteria and members can be identified through Defendant's records).

7

## B.     Referenced Arbitration Provisions Are Irrelevant.[4]

Defendant argues that some class members may be subject to mandatory arbitration, so they may not be class members.  For several, independent reasons, Defendants argument fails.

### 1.     This Court cannot consider the alleged arbitration provisions.

Notwithstanding that it submitted the affidavit of its 30(b)(6) witness to attest vaguely that some class members incurred debt from certain lenders (*see* Declaration of Shanna Carson ("Carson Dec."), Exhibit A [DE 46-1] to the Response, at ¶7), Defendant did not provide any evidentiary foundation for the alleged arbitration provisions on which it relies.  Instead, it suggests that this Court may take judicial notice of the agreements because they are published on a government website.  *See* Response, at p. 6.  Defendant does not provide any authority for assuming the authenticity of *non-governmental* documents appearing on a government website.

The cases cited by Defendant do not support its argument.  In *Qui Yen Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013), the court noted that documents posted on government websites can be presumptively authentic if *government sponsorship* can be verified by visiting the website itself.  In that case, Judge Posner referred to a Chinese government document on "The Chinese Central Government's Official Web Portal."  *Id.*  In *Gent v. CUNA Mut. Ins. Society*, 611 F.3d 79, 84, n. 5 (1st Cir. 2010), the court took judicial notice of the cause of lyme disease, which was published by, and on appeared on the website of, the Centers for Disease Control and Prevention.  In *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003), the court took judicial notice of medical records of military personnel appearing on the website of the National Personnel Records Center.

---

[4] Defendant conflates ascertainability (which focuses on whether class members can be identified without mini-trials) and predominance (which focuses on whether essential elements of the class's claims can be proven with common evidence).  *Nepomuceno*, 2016 WL 3392299, at *3.  Nonetheless, Plaintiff will address the argument here, because it is an overriding theme of Defendant's Response.

In each case, the records at issue were government records published by, and appearing on the websites of, government agencies. They were not the alleged documents of private entities that incidentally showed up on government websites. The mere appearance of the alleged arbitration provisions on a government website does not authenticate them. The court in *Felty v. Driver Solutions, LLC*, no. 13 C 2818, 2013 WL 5835712, at *3 (N.D. Ill. Oct. 30, 2013), rejected the same argument raised by Defendant's attorney on behalf of another client, refusing to take judicial notice of the *content* in court papers. The publisher must authenticate documents, and Defendant has given no indication that Chase Bank, Citibank, GE Money Bank, World Financial Capital Bank and WebBank are unavailable to authenticate their alleged documents. This Court should reject Defendant's request for judicial notice and disregard and strike Exhibit B to the Response. *See Messner*, 669 F.3d at 814 ("The fact that a defendant is not required to present evidence to defeat class certification does not give that defendant license to offer irrelevant and unreliable evidence.").

### 2. The accuracy of the arbitration provisions can be reasonably questioned and their relevance can be definitively rejected.

Fed. R. Evid. 201, which allows for judicial notice, applies only when a fact is "not subject to reasonable dispute in that it is…capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Denius*, 330 F.3d at 926. Here, the accuracy can reasonably be questioned.

Aside from a lack of authentication, the documents are irrelevant. Defendant boldly states that

> The class Plaintiff seeks to certify is not ascertainable as many of the class members are subject to enforceable arbitration clauses and class waivers contained in the terms and conditions of their agreements with the original creditors of their debts.

*See* Response, at p. 6. Conspicuously absent following that statement is a citation to *anything*. Not a scintilla of evidence ties Plaintiff or a class member to any arbitration provision.[5] Defendant points to unauthenticated documents with arbitration provisions, but even if this Court were to consider them, what do they have to do with this case? Two of the five are undated, and the other three are not tied to a single one of the 68,754 putative class members. Ms. Carson attests that "[a]pproximately one-third of the proposed class…includes debtors who incurred debt from Chase Bank, Citi Bank, GE Bank, World Financial Network National." *See* Carson Dec., at ¶ 7. So what? Are they subject to an arbitration agreement? Are they subject to *these* arbitration agreements?[6] In *Danley v. Encore Capital Group, Inc.*, no. 15-CV-11535, 2015 WL 7733450, at *3 (E.D. Mich. Dec. 1, 2015), the court rejected Defendant's same argument and tactic, when Defendant submitted *sample* Citibank account agreements with arbitration provisions, finding that

> [t]he court is not in a position to analyze the terms of any arbitration agreement or class action waiver until it knows it is looking at the relevant agreements. Unauthenticated sample credit card agreements, one dated many years after the credit card was first used and therefore accepted by plaintiff is not the type of evidence the court can use to support an order compelling arbitration.

Regardless, the referenced documents *cannot* be relevant. The proposed class is comprised entirely of people Midland Funding LLC ("Midland Funding") (the owner of the debt that Defendant attempts to collect) cannot sue because the statute of limitations has expired. The relevant statute of limitations is five years. 735 ILCS 5/13-205. Because the class period starts on March 7, 2015, class members must have already defaulted by March 7, 2010 to be included in

---

[5] Defendant has nothing tying Plaintiff to an arbitration provision. *See* 30(b)(6) Dep., at 104:17.
[6] Ms. Carson references Chase Bank as part of the "one-third" but Defendant did not even bother to attach an alleged Chase Bank account agreement. Moreover, the World Financial Capital Bank document expressly states that it is an "offer," not an account agreement. *See* Response, at Ex. B.

the class.  As such, they must have been covered by account agreements that *predated March 7, 2010* (probably significantly, since they would have had to sign up, get credit, default, ignore collection efforts, have their debt sold to Midland Funding and receive the operative dunning letter by that date).  <u>None</u> of the alleged account agreements is dated prior to March 7, 2010.

Therefore, because none of the documents relates to a class member, and this Court should reject Defendant's argument.

### 3.        These arbitration provisions do not apply to Defendant.

Even assuming *arguendo* that the referenced account agreements are authentic, and that this Court can consider them, and that this Court does consider them, and that they relate to any of the class members (none of which Defendant has shown), they have nothing to do with Defendant and are, therefore, irrelevant.

Notwithstanding Defendant's argument that *it* "is routinely successful in its motions to compel arbitration relying upon card member agreements," *see* Response, at pp. 6-7, Defendant mischaracterizes the cases.  In each cited case, *Midland Funding*, the alleged owner of the debt, was a defendant.  As the owner of the debt, *Midland Funding* is a party to the account agreements and, if an account agreement includes an arbitration provision, *Midland Funding* can invoke that provision.  Therefore, *Midland Funding* successfully compelled arbitration, not Defendant.

Here, Plaintiff sued Defendant.  Plaintiff did *not* sue Midland Funding.  In fact, Midland Funding is not even mentioned in the letter at issue.  *See* Second Amended Complaint, Ex. 1. Plaintiff did not sue on any account agreement.  Plaintiff did not sue on any issue related to an account agreement.  This lawsuit is only about Defendant's alleged debt collection violations. Defendant seeks to defeat class certification by invoking contractual provisions to which it is not a party.  Presumably, a lot of defendants would like to escape liability by merely referencing some

11

unrelated agreement to which a different company is a party, but Defendant offers no authority for allowing it here. Defendant is a separate legal entity, and it must be treated as such.[7]

*      *      *

Though Defendant argues that Plaintiff has failed to identify "a practical or efficient method to ascertain which individuals are in the class without requiring the Court to conduct individualized inquiries," *see* Response, at p. 7, Plaintiff suggests that the parties and the Court look at Defendant's list of 68,754 people who got the identical letter to the one attached as Exhibit 1 to the Second Amended Complaint. Those are the class members according to Defendant.

## IV.  JUST BECAUSE SHE DID NOT PAY DEFENDANT, PLAINTIFF CAN STILL REPRESENT THE CLASS.

Without citation to authority, Defendant argues that Plaintiff is not a typical class member because she said she was not seeking actual damages for herself but seeks them for the class, *see* Response, at p. 16, and that this "clearly creates a situation where individual issues predominate….". *Id*. at p. 19. That argument, made by Defendant's same attorney, was rejected. In *Magee v. Portfolio Recovery Associates, LLC*, no. 12 C 1624, 2015 WL 535859, at *3 (N.D. Ill. Feb. 5, 2015), the defendant argued that the plaintiff's claims were not typical because she never paid the debt collector but sought actual damages for the class, finding that "the fact that damages are not identical across all class members should not preclude class certification." *Id*. at *4 (*quoting Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 213)). "It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner*, 669 F.3d at 815; *see also Mullins v. Direct Digital, LLC*, 795 F.3d

---

[7] Defendant also argues that individual issues predominate due to various questions about which contract applies to each class member. *See* Response, at p. 18. Like the inapplicable arbitration provisions, Defendant provides no basis for considering any contract here, not only because it cites no legal authority, but also because it identifies no contract to which it *or* any class member is a party.

654, 671 (7th Cir. 2015) ("the need for individual damages determinations at this later stage of the litigation does not itself justify the denial of certification.").

"The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *Pawelczak*, 286 F.R.D. at 386 (*quoting De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Here, the legal theory and the underling fact (receipt of identical letter) are identical, and thus typical, as between Plaintiff and the class. *Id*.

## V.    INDIVIDUAL SUITS ARE NOT SUPERIOR.

As this Court recently found in certifying a FDCPA class,

> The FDCPA permits individual plaintiffs to recover up to $1,000 in statutory damages. *See* 15 U.S.C. § 1692k. Thus, the potential recovery for an individual plaintiff is unlikely to provide sufficient incentive for individual members to bring their own claims. Moreover, courts have held that FDCPA class actions are usually superior for reasons of judicial economy.

*Pawelczak*, 286 F.R.D. at 387 (citation omitted).

Defendant argues that this Court should deny certification because class recovery will be *de minimus*, citing cases outside of this district. *See* Response, at p. 19. The failure to cite local cases on this issue is no accident, though they exist, and they were argued by the same attorney representing Defendant here. Plaintiff rejects the notion that class recovery will be *de minimus*, particularly since she seeks class recovery of actual damages. A plaintiff seeking actual damages further diminishes a defendant's argument that class recovery is *de minimus*. *Magee*, 2015 WL 535859, at *5. Regardless, *de minimus* recovery is not a bar to certification, as the policy at the core of class actions is aggregating small individual claims that do not provide an incentive for

13

individual suits. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). In *Rawson v. Source Receivables Management, LLC*, 289 F.R.D. 267, 270-71 (N.D. Ill. 2013), the court also rejected the *de minimus* argument of Defendant's counsel in certifying a class, holding that

> Even assuming that class members could expect no more than a *de minimus* recovery, other interests are at stake. As I have noted in the past, "if class actions can be said to have a main point, it is to allow the aggregation of many small claims that would otherwise not be worth bringing, and thus to help deter lawless defendants from committing piecemeal highway robbery, a nickel here and a nickel there, that adds up to real money, but which would not be worth the while of an individual plaintiff to sue on…. While it is true that the statute allows for individual recoveries of up to $1,000, "this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burden of suing and able to find an attorney willing to take her case…."

(citations and quotations omitted). Additionally, "[e]ven where recovery is *de minimus*, there is value to certifying a class to address potentially unlawful behavior that would not otherwise be addressed because the barriers to bringing suit are too high.'" *Spiegel v. Ashwood Financial, Inc.*, no. 1:16-cv-01998-LJM-DML, 2017 WL 443168, at *3 (S.D. Ind. Feb. 2, 2017) (*quoting Fosnight v. LVNV Funding, LLC*, 310 F.R.D. 389, 394 (S.D. Ind. 2015)); *see also Gold v. Midland Credit Management, Inc.*, 306 F.R.D. 623, 633-34 (N.D. Cal. 2014) (given broad remedial purpose of FDCPA, predominance factor satisfied where statutory damages are sought to deter debt collectors from engaging in prohibited behavior).

Defendant also misrepresents the impact of class administration costs. Again, it cites no authority for its position, but it references two class administration estimates and says the cost will reduce class recovery. *See* Response, at p. 20. As with the alleged account agreements, this Court should disregard the estimates as inadmissible. If the Court considers them, it should also be aware that the estimates have no bearing on this case, because, untested as they are, they are for class *settlement* administration. *See* Response, at Exhibit D. They include significant charges for

14

managing a claims process, processing claims and distributing payments, none of which is relevant here. Plaintiff and Defendant have not settled this case.

## Conclusion

For the foregoing reasons, Plaintiff Renetrice R. Pierre requests that this Court certify the following class set forth in the Motion.

RENETRICE R. PIERRE, Plaintiff

By:    /s Paul F. Markoff
       One of Plaintiff's Attorneys

Paul F. Markoff
Karl G. Leinberger
Markoff Leinberger LLC
134 N LaSalle St Ste 1050
Chicago IL 60602
312.726.4162 (p)
312.674.7272 (f)
paul@markleinlaw.com

## CERTIFICATE OF SERVICE

I certify that I served a copy of this *Plaintiff's Reply in Support of Her Second Motion for Class Certification* on the following electronically by using the CM/ECF system on this 21st day of March, 2017:

David M. Schultz (dschultz@hinshawlaw.com)
Todd P. Stelter (tstelter@hinshawlaw.com)
Hinshaw & Culbertson LLP
222 N LaSalle St Ste 300
Chicago IL 60601

s/ Paul F. Markoff
Paul F. Markoff

15