IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RENETRICE R. PIERRE,
Individually and on Behalf
of others Similarly
Situated,

                Plaintiff,

          v.

MIDLAND CREDIT MANAGEMENT,
INC., a Kansas Corporation,

                Defendant.

Case No. 16 C 2895

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is the Plaintiff's Second Motion for Class Certification [ECF No. 31]. For the reasons stated herein, the Court grants Plaintiff's Motion.

## I.  BACKGROUND

Plaintiff Renetrice Pierre ("Pierre") brings this action against Defendant Midland Credit Management, Inc. ("Midland") under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), alleging that Midland's collection letters fail to provide necessary disclosures, in violation of various provisions of 15 U.S.C. §§ 1692(e)-(f).

On September 2, 2006, Pierre, a resident of Winnetka, Illinois, opened a credit card account with Target National Bank. (*See*, ECF No. 40 ("Sec. Am. Compl.") at Ex. 2.) That

bank charged off Pierre's account on October 26, 2008. (*Ibid.;* Carson Tr. 118:21-119:3.) Pierre's account was subsequently assigned to Midland Funding LLC, which then sued Pierre on December 6, 2010 in Lake County Circuit Court to collect a balance due that included interest accrued from the date of the charge-off. (*See,* Sec. Am. Compl. at Ex. 2; Carson Tr. 112:7-16, 120:5-15.)

On September 2, 2015, Midland sent Pierre a letter seeking to collect on the same debt underlying the Lake County action. (Sec. Am. Compl. at Ex. 1.) Midland primarily services and collects the charged-off credit card debt that Midland Funding LLC purchases in large portfolios. (*See,* ECF No. 46 ("Def.'s Br.") at 6.) As relevant, Midland's letter informed Pierre that she had been pre-approved for "a discount program designed to save [her] money" and that she could "put this debt behind [her]." The letter detailed three payment options: a lump sum payment, 12 monthly installment payments, or an alternative payment plan to be negotiated by calling Midland. (Sec. Am. Compl. ¶ 11 & Ex. 1.) The first two options indicated a "payment due date" of October 2, 2015, and the letter also indicated that the offer would expire on that date. (*Id.* ¶ 12 & Ex. 1; *see also,* Carson Tr. 45:7-21.) Separately, the letter advised Pierre that "[b]ecause of the

age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and payment or non-payment of this debt will not affect your credit score." (Sec. Am. Compl. ¶ 13 & Ex. 1.)

According to its Rule 30(b)(6) witness, Midland composes collection (or "discount") letters like those it sent to Pierre using a computer template; with the exception of personal and account information, these letters are otherwise identical form letters. (Carson Tr. 22:18-23:18, 159:9-162:13.) In addition, the letter's mentions of "we" and "us" refer to Midland (the debt servicer), not the entity that actually owns the debt (Midland Funding LLC). (*Id.* at 168:8-171:24.) Midland maintains a database of contact information for each of the individuals to whom such letters are sent, and it periodically updates this repository via skip traces. (*Id.* at 93:16-94:9.)

On March 7, 2016, Pierre filed this lawsuit on behalf of herself and others similarly situated, claiming that Midland's mailing of these letters violated the FDCPA. Her original Complaint defined a "Time-Barred Debt Class," an "Initial Communication Class," and a "5-Day Notice Class." Pierre defined the "Time-Barred Debt Class" as follows:

> All persons with Illinois addresses to whom Midland
> Credit Management, Inc. sent a letter seeking to
> collect a time-barred debt that failed to disclose
> that the alleged debtor could not be sued for the
> alleged debt, failed to disclose that even a partial
> payment would revive the ability to sue on the
> alleged debt and failed to disclose that the alleged
> debtor had the option not to pay the alleged debt.

(ECF No. 1 ("Compl.") ¶ 21.)  On June 28, 2016, Pierre amended

her Complaint, dropping the "Initial Communication" and "5-Day

Notice" classes and defining the putative class as follows:

> All persons with Illinois addresses to whom Midland
> Credit Management, Inc. sent a letter seeking to
> collect a time-barred debt that failed to disclose
> that the alleged debtor could not be sued for the
> alleged debt, failed to disclose that even a partial
> payment would revive the ability to sue on the
> alleged debt, failed to disclose that the alleged
> debtor had the option not to pay the alleged debt
> and failed to disclose that the letter was from a
> debt collector.

(ECF No. 20 ("First Am. Compl.") ¶ 19.)  Pierre then

propounded written discovery to Midland, requesting the number

of letters Midland sent from March 7, 2015 through March 7,

2016 to these putative class members. Midland responded:

> Defendant states that it estimates that between
> March 7, 2015, and March 7, 2016, it sent
> approximately 68,754 letters to persons with
> Illinois addresses which contained the following
> statement: "The law limits how long you can be sued
> on a debt.  Because of the age of your debt, we will
> not sue you for it, we will not report it to any
> credit reporting agency, and payment or non-payment
> will not affect your credit score."

(ECF No. 31 ("Pl.'s Mot.") at Ex. B, no. 21.)  Pierre now seeks certification of the following proposed class:

> All persons with Illinois addresses to whom Midland Credit Management, Inc. sent, from March 7, 2015 through March 7, 2016, a letter containing the following statement:  "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and payment or non-payment will not affect your credit score."

(Pl.'s Mot. at 3.)  Pierre amended her Complaint a second time to recite the same class definition. (*See,* Sec. Am. Compl. ¶ 18.)  In sum, Midland sent letters to 68,754 Illinois residents between March 7, 2015 and March 7, 2016; each letter contained the same quoted language now included in Pierre's proposed class definition; and each was otherwise identical to Pierre's letter with the exception of unique personal and account information. (*See also,* Carson Tr. 89:22-90:9, 93:7-11.)

## II.  <u>LEGAL STANDARD</u>

To certify a class under Federal Rule of Civil Procedure 23 ("Rule 23"), a court must find that the class (a) is defined such that its members are ascertainable and (b) meets not only the requirements of Rule 23(a) but also one of the three subsections of Rule 23(b).  *See, e.g., Jamie S. v. Milwaukee Pub. Schs.,* 668 F.3d 481, 493 (7th Cir. 2012). Under

Rule 23(a), the class members must be so numerous that joining each is impracticable (numerosity); there must be class-wide questions of law or fact (commonality); the named parties' claims or defenses must be typical of the class (typicality); and the representative must be able to protect the interests of the class adequately (adequacy). FED. R. CIV. P. 23(a); *see, Siegel v. Shell Oil,* 612 F.3d 932, 935 (7th Cir. 2010). Pierre in this case proceeds under Rule 23(b)(3), which additionally requires for certification that common questions of law or fact "predominate over any questions affecting only individual members, and . . . a class action is superior" to other available methods of adjudication. FED. R. CIV. P. 23(b)(3).

The Court must conduct a rigorous analysis to determine whether Pierre has shown by a preponderance of the evidence that the putative class meets the Rule 23 criteria. *See, Messner v. Northshore Univ. HealthSys.,* 669 F.3d 802, 811 (7th Cir. 2012). In doing so, the Court will resolve factual disputes that are material to class certification, as it is required to do at this stage. *See, ibid.*

### III.  <u>ANALYSIS</u>

Midland opposes certification on the following grounds: Pierre lacks standing as a named plaintiff, the class is not

sufficiently identifiable, Pierre's claims are not typical of those of the class, Pierre and her counsel are not adequate representatives, individual issues predominate, and a class action is not a superior method for adjudicating the controversy. The Court rejects each of these arguments below and finds that Plaintiff has carried her burden under Rule 23.

### A. Standing

Standing is a threshold jurisdictional requirement that compels the plaintiff to allege that (1) she has suffered an injury in fact, that is, "'an invasion of a legally protected interest which is . . . concrete and particularized, and . . . actual or imminent'"; (2) the injury is "'fairly traceable'" to the action of the defendant; and (3) a favorable decision is likely to redress the injury. *Dunnet Bay Const. Co. v. Borggren,* 799 F.3d 676, 688 (7th Cir 2015) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). This threshold requirement applies to representative plaintiffs in class actions. *See, e.g., Lewis v. Casey,* 518 U.S. 343, 357 (1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured. . . .") (internal quotation marks omitted); *see also, O'Shea v. Littleton,* 414

U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

"Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1549 (2016).  Put another way, each violation of a Congressional statute authorizing a private right of action does not create an Article III injury. *See, Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583, 590-91 (7th Cir. 2016) (rejecting the argument that a violation of the Real Estate Settlement Procedures Act, without more, is a sufficient injury in fact after *Spokeo*).  As relevant, *Spokeo* teaches that "violation of a statute that causes no harm does not trigger a federal case." *Meyers v. Nicolet Restaurant of De Pere, LLC,* 843 F.3d 724, 727-28 & n.2 (7th Cir. 2016) (holding that failure to truncate a credit card's expiration date on a receipt was a mere procedural violation of the Fair and Accurate Credit Transactions Act and insufficient to confer Article III standing after *Spokeo*).

As class representative, Pierre must therefore demonstrate that she has suffered injury in fact as a result of Midland's acts, which injury is likely to be redressed by a favorable decision in this case. Invoking *Spokeo,* Midland argues that Pierre fails to do so because the operative complaint's allegations are deficient as to her actual injury and because Pierre testified at her deposition that she was not herself seeking actual damages. (Def.'s Br. at 15-16.)

In contrast to the "bare procedural violation" of the Fair Credit Reporting Act at issue in *Spokeo* – inaccurate personal information on a consumer report website – Pierre here alleges that Midland harmed her by sending a misleading dunning letter that sought payment on a time-barred debt and lacked disclosures to which she was legally entitled. Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: "a legally protected interest in certain information about debts," with "deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury." *Saenz v. Buckeye Check Cashing of Illinois,* No. 16 C 6052, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016) (rejecting a *Spokeo*-based standing argument that the plaintiff suffered no injury in fact by mere receipt of a letter lacking notices

about the plaintiff's right to dispute the debt, verify it, or obtain creditor information). Courts in this Circuit hew to this approach in FDCPA cases when *Spokeo*-based standing challenges surface. *See, e.g., Quinn v. Specialized Loan Servicing, LLC,* No. 16 C 2021, 2016 WL 4264967, at *3-4 (N.D. Ill. Aug. 11, 2016) ("[Defendant's] alleged failure to provide [plaintiffs] with information required under the FDCPA constitutes a sufficiently concrete harm for purposes of Article III standing."); *Lane v. Bayview Loan Servicing, LLC,* No. 15 C 10446, 2016 WL 3671467, at *3-5 (N.D. Ill. July 11, 2016) ("Lane has alleged a sufficiently concrete injury because he alleges that [the defendant] denied him the right to information due to him under the FDCPA.").

*Spokeo* does not sweep so widely as to overrule Seventh Circuit decisions affirming the power of Congress to enact statutes creating legal rights, the invasion of which confers standing "even though no injury would exist without the statute." *Mogg v. Jacobs,* No. 15 C 1142, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) (citing *Sterk v. Redbox Automated Retail, LLC,* 770 F.3d 618, 623 (7th Cir. 2014)). Canonical FDCPA cases in this Circuit find Article III standing based *solely* on the plaintiff's receiving allegedly unlawful debt collection demands. *See, e.g., Keele v. Wexler,* 149 F.3d 589

(7th Cir. 1998); *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076 (7th Cir. 2013). These remain good law because they are harmonious with *Spokeo*'s recognition that "the risk of real harm" can satisfy the requirement of concreteness. *See, Spokeo,* 136 S.Ct. at 1549 ("[V]iolation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified.") (emphasis in original).

As such, the Court finds that Pierre had a right to receive the FDCPA-required disclosures she alleges were absent from the collection letter. This suffices for a concrete injury: her "right to receive [FDCPA-mandated] disclosures is not hypothetical or uncertain," and while this injury may not have resulted "in tangible economic or physical harm that courts often expect, the Supreme Court has made clear [that] an injury need not be tangible to be concrete." *Church v. Accretive Health, Inc.,* 654 Fed. Appx. 990, 994-95 (11th Cir. July 6, 2016) (citing *Spokeo,* 136 S.Ct. at 1549).

### B. Objectively Identifiable Class

When determining whether to certify a class, the Court "must decide whether the proposed class is sufficiently identifiable." *Pawelczak v. Financial Recovery Servs., Inc.,*

286 F.R.D. 381, 384-85 (N.D. Ill. 2012) (internal quotation marks omitted); *see also, Alliance to End Repression v. Rochford,* 565 F.2d 975, 977-78 (7th Cir. 1977). Such is the case only if class members "can be ascertained based on objective criteria." *Pawelczak,* 286 F.R.D. at 384-85. (internal quotation marks omitted); *see also, Nat'l Org. for Women, Inc. v. Scheidler,* 172 F.R.D. 351, 357 (N.D. Ill. 1997).

Midland argues that Pierre's proposed class is not identifiable because individualized inquiries are necessary to determine whether members are subject to arbitration clauses and class action waivers vis-à-vis agreements with their original creditors. (*See,* Def.'s Br. at 5-7.) However, identifiability concerns whether each potential class member falls within the class based on objective criteria. Midland's invocation of the need for individualized inquiries is more properly directed to predominance and, as such, the Court engages it in the Rule 23(b)(3) portion of this opinion.

For now, it suffices to note that the class is sufficiently identifiable because the parties can ascertain class members via ministerial inspection of Midland's account records. In response to written discovery, Midland identified the exact number of letter recipients in Illinois – 68,754 –

and Pierre now seeks certification of a class defined by the same parameters underlying Midland's disclosure of this number. Midland further responded that, "[s]hould the court certify a class in this matter, Defendant will disclose the identity of the class members at issue." (Pl.'s Mot. at Ex. B, nos. 21-22.) Indeed, Midland maintains contact information for every letter recipient and updates that information periodically. The only basis upon which an individual may qualify as a class member – being among those 68,754 individuals - is "clearly objective." *Foreman v. PRA III, LLC,* No. 05 C 3372, 2007 WL 704478, at *5-6 (N.D. Ill. Mar. 5, 2007).

Thus, Pierre has sufficiently alleged an objectively identifiable class.

## C. Rule 23(a)

### 1. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). While there is no "magic number" of class members that suffices for numerosity, joinder of forty or more members is generally considered impracticable. *See, e.g., Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) (holding that a proposed class of forty was "a

sufficiently large group to satisfy Rule 23(a)"); *Hale v. AFNI, Inc.,* 264 F.R.D. 402, 404 (N.D. Ill. 2009); *Oplchenski v. Parfums Givenchy, Inc.,* 254 F.R.D. 489, 495 (N.D. Ill. 2008) (collecting cases); Rubenstein, *Newberg on Class Actions,* § 3:12 ("[A] class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

Although Midland does not contest that it sent the letters at issue to 68,754 Illinois residents, it argues that a substantial portion of these potential class members' claims are barred by the statute of limitations. Under the FDCPA, "[a]n action to enforce any liability" must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Communications made outside this statutory period are time-barred, and the Court may not consider them. Pierre filed this lawsuit on March 7, 2016. She first amended her Complaint on June 28, 2016, and then again on January 26, 2017. Her proposed class is defined to include all individuals to whom Midland sent the letters at issue from March 7, 2015 to March 7, 2016. Midland maintains that the initial and first amended Complaints did not toll the statute of limitations, such that those class members to whom Midland mailed letters from March 7, 2015 to January 26, 2016 have

claims that are time-barred – a subset that would include
Pierre herself.  Thus, Midland posits, Pierre fails to satisfy
the numerosity requirement because the number of individuals
with cognizable claims is speculative, and in any event far
less than 68,754.  The Court disagrees.

"An amendment to a pleading relates back to the date of
the original pleading when . . . the amendment asserts a claim
or defense that arose out of the conduct, transaction, or
occurrence set out – or attempted to be set out – in the
original pleading."  FED. R. CIV. P. 15(c)(1).  A statute of
limitations will be tolled when commencement of a class action
"notifies the defendants not only of the substantive claims
being brought against them, but also of the number and generic
identities of the potential plaintiffs who may participate in
the judgment."  *Am. Pipe & Const. Co. v. Utah,* 414 U.S. 538,
555 (1974).  A court deciding whether a claim asserted by a
new plaintiff relates back should consider "whether the
defendant had such notice of the added claim at the time the
action was commenced that relation back of the added claim
will not cause the defendant undue prejudice," remembering
that the "Federal Rules of Civil Procedure are to be liberally
construed."  *Paskuly v. Marshall Field & Co.,* 494 F.Supp. 687,
688 (N.D. Ill. 1980); *see, Staren v. Am. Nat'l Bank & Trust*

*Co. of Chicago,* 529 F.2d 1257, 1263 (7th Cir. 1976) (finding amendments insignificant for statute-of-limitations purposes "when the change is merely formal and in no way alters the known facts and issues on which the action is based").

Such is the case here. As in *Selburg v. Virtuoso Sourcing Group, LLC,* No. 11 C 1458, 2012 WL 4514152 (S.D. Ind. Sept. 29, 2012), Pierre amended her Complaint to add class allegations premised on the same debt collection letter that she received. Pierre's class allegations "arose from the same defect contained in the plaintiff's initial complaint – that is, the defendant's failure to provide the necessary disclosures in the [September 2015] collection letter." *Pawelczak,* 286 F.R.D. at 388 (summarizing *Selburg*). As such, Pierre's "original allegations and the amended class allegations concerned the exact same conduct and sufficiently 'related back' to the date of the original filing." *Id.* (citing *Selburg,* 2012 WL 4514152 at *6.) They arise from the same conduct, transaction, or occurrence set forth in the original pleading, and indeed all the claims arise from a form letter lacking identical disclosures.

Given the factual setting, it is difficult to conceive how Pierre's amendments prejudiced Midland or otherwise undermined its interest in effective notice of the claims to

be asserted or of the number and generic identities of potential participants. In responding to written discovery concerning the class definition proposed in Pierre's First Amended Complaint, Midland disclosed the number of individuals to whom it sent letters using language identical to that which now forms the basis of Pierre's class definition (her Second Amended Complaint). Midland's invocation of *Cliff v. Payco General Am. Credits, Inc.,* 363 F.3d 1113 (11th Cir. 2004), is unavailing. Besides not binding this Court, *Cliff* dealt with an FDCPA plaintiff seeking to amend the proposed class from a Florida-based class to a *nationwide* class after the statute of limitations had run. *Id.* at 1131. When the statute of limitations ran, the defendant debt collector had been placed on notice only of its obligation to defend against claims of Florida consumers. *Id.* at 1132. Thus, the court upheld the district court's finding that the defendant did not have sufficient notice of the magnitude of potential claimants to permit relation back. Here, by contrast, each of Pierre's initial proposed classes was defined solely to include Illinois residents. (*See, e.g.,* Compl. ¶¶ 21, 32, 42 ("All persons with Illinois addresses. . . ."); First Am. Compl. ¶ 19 ("All persons with Illinois addresses. . . .").)

Midland launches a final Hail Mary, asserting that the relation back doctrine is unavailable because Pierre's original class definition was an impermissible "fail-safe." Such a class is defined so that whether a person qualifies depends on whether the person has a valid claim – a class member either wins or, by virtue of losing, is defined out of the class (and is therefore not bound by the judgment). *See, Messner,* 669 F.3d at 825. Midland declares that, because Pierre's initial "Time-Barred Debt" and "Initial Communication" classes were defined to include only individuals to whom Midland failed to disclose information allegedly required under the FDCPA, "the only individuals that could possibly be defined by such [] class definition[s] are individuals that have already won their claim after substantive determinations are made." (Def.'s Br. at 10-11.) But this is simply not true. These initial classes were not defined to require, for example, *unlawful* or *culpable* failures to disclose; a trier of fact could have determined that the FDCPA required none of the withheld disclosures without affecting the class definitions. Thus, Pierre's initial, abandoned class definitions were not "fail-safes." Even if they were, *Messner* suggests that the proper remedy is "refining the class definition rather than [] flatly denying

class certification on that basis." *Id.* (collecting cases). Refining the class definition is precisely what transpired during discovery and in the course of Pierre's amendments.

The proposed class definition therefore relates back to the original Complaint such that none of the members of the putative class have time-barred claims. As a result, the numerosity requirement of Rule 23(a)(1) is satisfied because a class of 68,754 is so large that joinder is impracticable.

### *2. Commonality*

Under Rule 23(a)(2), certification requires a question of law or fact common to the class. (Rule 23(b)(3), discussed *infra,* further requires that such common question(s) of law or fact predominate over questions pertaining only to individual class members. FED. R. CIV. P. 23(b)(3).) The crux of commonality is whether the plaintiff has raised a common question such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011); *see also, Chicago Teachers Union v. Board of Educ*., 797 F.3d 426, 434 (7th Cir. 2015).

Midland does not contest commonality, instead throwing all its weight behind Rule 23(b)(3). This case involves a standard form letter, with only personal and account

information varying across the 68,754 missives Midland sent to Illinois residents. The Court must therefore "resolve a question common to all potential class members – namely, whether Exhibit A violates Section 1692e of the FDCPA." *Quiroz v. Revenue Production Mgmt., Inc.,* 252 F.R.D. 438, 442 (N.D. Ill. 2008) ("The requisite common nucleus of operative fact exists in FDCPA claims when the controversy arises from a standard form debt collection letter.") (citations omitted). Determining the "truth or falsity" of that question resolves in one stroke an issue that is central to the validity of each class member's claims. What is more, each specific challenge to the legality of the "discount" letter applies across all class members: failure to disclose that each recipient's debt was time-barred by the relevant statute of limitations, that any payment toward the debt would revive the ability to sue on the debt, that each recipient had no legal obligation to make payments on the debt, and that no recipient had a payment due. (Sec. Am. Compl. ¶¶ 14-16; ECF No. 32 ("Pl.'s Br.") at 2.) Therefore, Rule 23(a)(2) commonality is met.

### 3. *Typicality*

To satisfy Rule 23(a)(3), the claims and defenses of the class representative must be typical of the claims and defenses of the putative class members. FED. R. CIV.

P. 23(a)(3). This generally demands that the named plaintiff have the same interest and suffer the same injury as the proposed class. *See, Gen. Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982). Under the Seventh Circuit's two-prong test for typicality, a named plaintiff's claim must (1) arise "from the same event, practice or course of conduct as claims of the other class members"; and (2) be based on the same legal theory. *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983); *accord Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006) (permitting some factual distinction between the named plaintiff and other class members). Finally, the typicality inquiry focuses on the defendant's actions, not the plaintiff's. *See, Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996).

Midland contends that Pierre's claims are not typical of the class because, despite representing a class of individuals seeking actual damages, she did not make any payments to Midland and testified during her deposition that she was not seeking actual damages. (*See,* Def.'s Br. at 14-16.) However, typicality does not require *identical* claims, and "factual variations among class members' grievances do not defeat a class action." *Keele,* 149 F.3d at 594. That a debt

collection letter is unsuccessful in extracting payment from the named plaintiff is "largely irrelevant." *Ibid.*

At bottom, Pierre's claims are typical because they arose from the same practice or course of conduct underlying the claims of other class members – namely, Midland's mass mailing of standardized letters offering "discounts" with associated "due dates" on time-barred debt. The District of New Jersey recently found Rule 23(a)(3) satisfied despite Midland's argument that factual differences undermined typicality:

> Plaintiff alleges that Defendant violated the FDCPA by sending Plaintiff a collection letter which contained a due date without any basis for asserting that a payment was due on the date specified. . . . These claims, that Defendant violated the FDCPA by sending Plaintiff the Statement containing the due date . . ., are the same claims which would be asserted by the putative class members to which Defendant admitted it sent similar Statements on behalf of Midland Funding. . . . Plaintiff's claim is based on the same course of conduct and legal theories as that of the putative class members.

*Nepomuceno v. Midland Credit Mgmt., Inc.,* No. 14 C 5719, 2016 WL 3392299, at *5 (D.N.J. June 13, 2016). To the extent there are factual distinctions between Pierre's claim and those of the putative class members, the "similarity of legal theory [between them] . . . control[s]." *De La Fuente,* 713 F.2d at 232.

The Court finds that the proposed class satisfies Rule 23(a)(3)'s requirement of typicality.

### 4. *Adequacy*

Rule 23(a)'s final requirement is that "the representative will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Determinations of adequacy under Rule 23(a)(4) require three elements. First, the representative(s) of the class cannot have interests contrary to those of the rest of the class. *See, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625-29 (1997) (holding that class representatives must be part of the class, possess the same interest, and have suffered the same injury); *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992) ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."). Second, to ensure vigorous advocacy, the class representative(s) must be sufficiently interested in the case outcome. *Sec'y of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986); *see also, Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir. 1991) (noting that the representative need "only possess general knowledge of the case and participate in discovery"). Third, class counsel must be qualified,

experienced, and generally able to conduct the case. *See, Susman v. Lincoln Am. Corp.,* 561 F.2d 86, 90 (7th Cir. 1977).

Midland argues that Pierre is an inadequate class representative for the same reasons that underlie its ill-founded arguments against standing and typicality. These objections to adequacy, "indistinguishable" from Midland's prior arguments, "fail[] for the same reason[s]." *Rawson v. Source Receivables Mgmt., LLC,* 289 F.R.D. 267, 270 (N.D. Ill. 2013); *see also, Cavin v. Home Loan Ctr., Inc.,* 236 F.R.D. 387, 392-93 (N.D. Ill. 2006) (rejecting the argument that the named plaintiffs, who did not suffer actual damages, had conflicting interests with a class seeking actual damages).

Midland further characterizes Pierre's counsel as inadequate based on poor "performance in drafting pleadings and missteps in choosing dates for a class period." (Def.'s Br. at 17.) These arguments are parasitic on Midland's prior fruitless efforts to portray the claims of many putative class members as time-barred and the initial (now abandoned) class definitions as impermissible "fail-safes." Because the amended pleadings relate back to the original Complaint and the original proposed classes were not "fail-safes," these purported missteps of counsel furnish no basis for a finding of inadequacy.

On the contrary, Rule 23(a)(4) is satisfied here. First, there are no conflicts of interest between Pierre and the rest of the class. The nature of their respective claims is identical, and Pierre has a clear stake in a successful outcome – she seeks damages for herself and the class – that raises no specter of antagonistic interests. Second, Pierre has demonstrated an interest in the case by responding to discovery requests, being deposed, and consulting with her counsel throughout. (*See,* Pl.'s Br. at 7; Pl.'s Mot at Ex. E ¶ 4; *see generally,* Def.'s Br. at Ex. C.) Third, proposed class counsel is "experienced, competent, qualified, and able to conduct the litigation vigorously." *Cavin,* 236 F.R.D. at 393. Lead counsel is an active and experienced practitioner in consumer class action cases, and has been appointed class counsel in multiple cases in the Northern District of Illinois. (*See,* Pl.'s Mot. at Ex. E ¶¶ 2-3.)

### D. **Rule 23(b)(3)**

#### 1. *Predominance*

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3); *see also, Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013). This imposes a more stringent requirement than does

Rule 23(a)(2) commonality. *Amchem Prods.*, 521 U.S. at 623-24. Predominance "requires a qualitative assessment . . . [and] 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotation omitted).

Midland argues that mandatory arbitration provisions and class action waivers in many putative class members' original credit agreements necessitate individualized inquiries to determine whether each class member has an actionable claim. (*See,* Def.'s Br. at 5-7, 18.) Midland points to sample credit agreements from, for example, Chase Bank and Citi Bank that contain such provisions, and avers that as many as one-third of potential class members are subject to similar legal bars to recovery in this action. (*Id.* at 6.) Alternatively, Midland clothes its prior statute-of-limitations and typicality arguments in predominance garb, suggesting that the potential for plaintiffs with time-barred or actual damages claims leads to predominance of individualized issues. (*See, id.* at 19.)

Leaving aside the threshold authentication issue of whether the Court can even take judicial notice of the attached sample credit agreements, the Court finds them

irrelevant to predominance here. Midland Funding LLC, not Midland, is the assignee and owner of putative class members' underlying debt obligations. (*See, e.g.,* Carson Tr. 168:18-21 (admitting that Midland Funding LLC, not Midland, owns the debt referenced in Pierre's letter); *id.* at 170:16-24 (testifying that "[t]hey [all letter recipients] were informed in a previous letter that Midland Funding owns the debt").) Thus, the benefits of any class action waiver or arbitration provision contained in underlying credit agreements do not redound to Midland. In this action, Pierre is suing Midland for violations of the FDCPA arising out of its conduct as a debt servicer; it is suing *neither* Midland Funding LLC *nor* any entity that was a party to the credit agreements containing the alleged class action waivers or mandatory arbitration provisions. Contrary to Midland's wrongheaded proclamation, the potential existence of such provisions in class members' underlying credit agreements does not necessitate individualized inquiries to determine eligibility to participate in this suit. Rather, "these inquiries are unnecessary to resolution of Plaintiff's claim." *Quiroz,* 252 F.R.D. at 444.

Midland's reliance on its prior typicality arguments to foreclose Rule 23(b)(3) certification is similarly unavailing.

Indeed, "the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)." *Messner,* 669 F.3d at 815; *accord, Mullins v. Direct Digital, LLC,* 795 F.3d 654, 671 (7th Cir. 2015). More generally, it is axiomatic that varying damages across class members "should not preclude class certification." *Butler,* 727 F.3d at 801. On the contrary, courts in this Circuit routinely find Rule 23(b)(3) satisfied where the common issue is "whether the debt collection letters that Defendant sent to [Plaintiff] and the class members violate the FDCPA." *Day v. Check Brokerage Corp.,* 240 F.R.D. 414, 419 (N.D. Ill. 2007); *see, e.g., Magee v. Portfolio Recovery Asscs., LLC,* No. 12 C 1624, 2015 WL 535859, at *3-4 (N.D. Ill. Feb. 5, 2015) (finding Rule 23(b)(3) satisfied where the defendant sent allegedly misleading debt collection letters); *Moore v. Stellar Recovery, Inc.,* No. 13 C 2294, 2014 WL 3509729, at *3 (N.D. Ill. July 14, 2014) (same); *Quiroz,* 252 F.R.D. at 444 (same). Because the central issue in this case involves Midland's standardized course of conduct directed to each class member, any individualized damages issues are overwhelmed by common questions.

Similarly, resolution of the common questions in this case will implicate objective, class wide proof. For example,

to prove a violation of 15 U.S.C. § 1692(e) based on a false or misleading statement, one must show that the statement would mislead or deceive a reasonable consumer. *Ruth v. Triumph Partnerships,* 577 F.3d 790, 800 (7th Cir. 2009) ("If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA – even if it is false in some technical sense."). The false or misleading statement must also be objectively material. *Hahn v. Triumph Partnerships LLC,* 557 F.3d 755, 757 (7th Cir. 2009). Thus, there is likely to be common and objective evidence concerning the key merits inquiries in this case. Rather than necessitating individualized inquiries into whether a particular consumer was misled, the common questions in this case are amenable to objective proof such that any individualized questions are distinctly ancillary.

Therefore, the Court finds that Rule 23(b)(3)'s predominance requirement is met.

### *2. Superiority*

Finally, Rule 23(b)(3) requires that a class action be the superior method of adjudicating the claims. A class action is the more efficient procedure for determining liability and damages where a defendant's course of conduct "may have imposed costs on tens of thousands of consumers yet

not a cost to any one of them large enough to justify the expense of an individual suit." *Butler,* 702 F.3d at 362. Indeed, "FDCPA class actions are usually superior for reasons of judicial economy." *Pawelczak,* 286 F.R.D. at 387 (citation omitted). "[A] de minims recovery (in monetary terms) should not automatically bar a class action," because the policy at the heart of class action law is aggregating small individual claims that would not otherwise incentivize the bringing of individual suits. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997).

Midland maintains that this Court should deny certification because each potential class member's recovery will be *de minims*. Noting that class recovery is capped at the lesser of 1 percent of a debt collector's net worth or $500,000, Midland calculates the maximum statutory recovery per class member as just over $7.00. (Def.'s Br. at 19-20.) Because an individual plaintiff proceeding on her own could potentially recover up to $1000 in statutory damages, Midland contends that a class action is not the proper vehicle for litigating this case.

In a recurring theme, Midland's arguments miss the mark. "True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of

her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case." *Mace,* 109 F.3d at 344. In this case, allowing the action to proceed on a class wide basis aligns with both the purpose of class actions (incentivizing aggregation of claims where little incentive to sue individually would otherwise exist) and the purpose of the FDCPA (protecting consumers from abusive debt collection practices). Proceeding as a class action will also further judicial efficiency. Rather than this Court assuming the mantle of Punxsutawney and counsel the part of Bill Murray's "Phil," resolving the legality of Midland's form "discount" letter can occur once and for all – instead of (potentially) 68,754 times.

Even if the Court accepts that class recovery necessarily will be *de minimis,* case after in-circuit case puts paid to Midland's argument that this works against superiority. *See, e.g., Spiegel v. Ashwood Financial, Inc.,* No. 16 C 1998, 2017 WL 443168, at *3 (S.D. Ind. Feb. 2, 2017) ("Even where recovery is *de minimis,* there is value to certifying a class to address potentially unlawful behavior that would not otherwise be addressed because the barriers to bringing suit are too high.") (internal quotation marks omitted); *Rawson,* 289 F.R.D. at 270-71 ("Even assuming that class members could

expect no more than a de minimis recovery, other interests are at stake."); *Quiroz,* 252 F.R.D. at 444-45 (finding class action superior even though the class was likely to receive only *de minimis* recovery); *Warcholek v. Med. Collect. Sys., Inc.,* 241 F.R.D. 291, 295-96 (N.D. Ill. 2006) (same); *Nichols v. Northland Groups, Inc.,* No. 5 C 2701, 2006 WL 897867, at *11 (N.D. Ill Mar. 31, 2006) (same). In any event, Pierre is seeking actual damages for the class, "which may increase the amount of damages awarded." *Magee,* 2015 WL 535859 at *4-5 (finding the superiority requirement met over the defendant's objection that class recovery would be *de minimis*).

Therefore, the Court finds that the class action device is superior for adjudicating this case.

## IV.  CONCLUSION

Having found that the Plaintiff satisfies all of the requirements of FED. R. CIV. P. 23(a), as well as those of Rule 23(b)(3), the Court hereby grants Plaintiff's Second Motion to Certify Class [ECF No. 31].

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: April 21, 2017