**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RENETRICE R. PIERRE,** Individually and on Behalf of others Similarly Situated, | |
| Plaintiff, | Case No. 16 C 2895 |
| v. | **Judge Harry D. Leinenweber** |
| **MIDLAND CREDIT MANAGEMENT, INC., a Kansas Corporation,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Renetrice Pierre ("Pierre") sued Defendant Midland Credit Management, Inc. ("Midland") on behalf of a class of plaintiffs (Count I) and herself individually (Count II), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* Pierre now moves for summary judgment as to liability on both counts. (Pl.'s Mot., ECF No. 68.) Midland moves to strike (Def.'s Mot. to Strike, ECF No. 79) certain paragraphs from the documents Pierre files in support of her Motion. For the reasons stated herein, the Court grants Pierre's Motion for Summary Judgment and denies Midland's Motion to Strike.

### I. BACKGROUND

Sometime in 2006 or 2007, Pierre opened and began to use a credit card account with Target National Bank ("TNB"). (Pl.'s Statement of

Facts ("SOF"), ECF No. 70 ¶ 11; Def.'s Resps. to Pl.'s SOF, ECF No. 81 ¶ 11.) She eventually failed to pay off the balance (Pl.'s SOF ¶ 13) and later defaulted in March or April 2008. (Def.'s Resps. to Pl.'s SOF ¶ 14.) Thereafter, TNB sold the debt to Midland Funding, LLC, for which Defendant Midland Credit Management, Inc. is a debt collector. (Def.'s SOF Responses ¶¶ 7, 13.) In an effort to collect on that debt, Midland sent a dunning letter to Pierre on September 2, 2015. (*Id.* ¶ 17; *see,* Demand Let., Ex. 1 to Pl.'s Second Am. Compl. ("SAC"), ECF No. 40-1.) Pierre maintains, without contradiction by Midland, that the statute of limitations on a collection action for that debt had run by the time Midland sent the letter. (*See,* Pl.'s SOF ¶¶ 26–27; 735 ILCS 5/13-205.) That letter is the keystone in this case, so some description of it is necessary. The letter stated a current balance of $7,578.57 and listed Target National Bank as the original creditor to the debt. (Demand Let.) The letter began by stating: "Congratulations! You have been **pre-approved** for a discount program designed to save you money." (*Id.* (emphasis in original).) The letter then presented three "options": Option 1 offered 40% off the advertised balance if Pierre paid by October 2, 2015; Option 2 offered 20% off if Pierre elected to make 12 monthly payments; and Option 3 invited Pierre to call Midland to discuss her options and perhaps pay only $50/month on the debt. (*Id.*) Finally, the letter included the following disclosure:

> The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and

payment or non-payment of this debt will not affect your credit score.

*Id.*

## II. DISCUSSION

Pierre filed this action alleging that Midland violated the Fair Debt Collection and Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"). She pressed both individual claims and putative class claims, and on April 21, 2017, the Court certified a class of all persons with Illinois addresses to whom Midland sent, from March 7, 2015 through March 7, 2016, a letter containing the disclosure laid out above. (*See, generally,* Mem. Op. and Order, Apr. 21, 2017, ECF No. 59.)

This opinion now rules on two Motions before the Court: Pierre's Motion for Summary Judgment as to liability on both Count I (class claims) and Count II (individual claims), and Midland's Motion to Strike certain statements from the documents supporting Pierre's Motion. The Court addresses these in reverse order, and, for the reasons stated below, denies Midland's Motion to Strike and grants Pierre's Motion for Summary Judgment as to liability.

### A. Midland's Motion to Strike

To establish a *prima facie* case for an FDCPA violation, a plaintiff must demonstrate (among other things, discussed below at Part II.B.1) that she incurred a debt arising from a transaction entered for personal, family, or household purposes. 15 U.S.C. § 1692a(5); *Pantoja v. Portfolio Recovery Assocs., LLC,* 78 F.Supp.3d

743, 745 (N.D. Ill. 2015) (hereafter, "*Pantoja I*") *aff'd,* 852 F.3d 679 (7th Cir. 2017) (hereafter, "*Pantoja II*"). Midland moves to strike (ECF No. 79) certain paragraphs from Pierre's declaration (ECF No. 72-3) and her Statement of Facts (ECF No. 70), asserting that these paragraphs state legal conclusions and not facts. Midland further suggests that if these paragraphs are struck as it requests, the result will be "fatal" to Pierre's lawsuit. (Pl.'s Mot. to Strike ¶ 2.) In the paragraphs at issue, Pierre states: "From 2007 to 2008, I used the TNB Card for personal, family, household items for me and my son. I never used the TNB Card for anything other than personal, family, household items, including for any business purpose" (Pierre Decl., ECF No. 72-3 ¶¶ 4-5), and "[I] used the TNB Card only for personal, family, household purposes." (Pl.'s SOF ¶ 12.)

These statements may be lean, but in light of relevant case law and the lack of contrary facts before the Court, they are sufficient to demonstrate Pierre's personal use of the card. In *Pantoja I,* the defendant made the same argument Midland makes here: that the plaintiff failed to demonstrate he accumulated the at-issue debt for personal purposes. *Pantoja I,* 78 F.Supp.3d at 745-46. The *Pantoja* plaintiff never actually used the credit card in question, but had accumulated debt assessed from activation and late fees on the card. *Id.* The court found that the plaintiff had adequately demonstrated a consumer (*i.e.,* personal purpose) debt because undisputed evidence showed that the card was issued to the plaintiff personally, and no evidence in the record "even remotely suggest[ed]" that the card was

issued for anything other than household purposes. *Id.* at 746. In another FDCPA case, the plaintiff noted in her deposition that she used her credit to buy "gas, clothes, things like that." *Gomez v. Portfolio Recovery Assocs., LLC,* No. 15 C 4499, 2016 WL 3387158, at *2 (N.D. Ill. June 20, 2016). The defendant protested that the plaintiff could not establish her personal use of the credit, but the defendant cited no evidence to contradict plaintiff's assertions, despite having "every opportunity" to develop its evidence on this issue at the plaintiff's deposition. *Id.* The court ruled that merely questioning the sufficiency of the plaintiff's evidence was not a proper basis to dispute assertions in a statement of facts and accordingly plaintiff's assertions of personal use were deemed undisputed pursuant to Local Rule 56.1. *Id.*

Although the Court acknowledges that *Pantoja* and *Gomez* are not identical to the case at bar, these are differences without distinction. Pierre set forth that she used the (later defaulted-upon) card — which the parties do not dispute was issued to her personally, rather than to some business of hers — to buy household items for herself and her son, and that she never used the card for any business purpose. (Pierre Decl. ¶¶ 4-5; Pl.'s SOF ¶ 12.) Though Midland takes issue with the sufficiency of that description, Midland has not said it is untrue, nor has Midland put forward any evidence to contradict it. *Gomez,* 2016 WL 3387158, at *2. And as in *Gomez,* Midland did not pursue this issue when it had the opportunity during Pierre's deposition. Accordingly, Pierre's assertion that her debt

was consumer in nature is deemed an undisputed fact.  N.D. Ill. Local Rule 56.1.  Midland's Motion to Strike is denied.

## B. Pierre's Motion for Summary Judgment on Liability

On a summary judgment motion, the movant bears the burden of establishing that there is no genuine dispute of any material fact and that she is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Becker v. Tenenbaum-Hill Assocs., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990).  The court construes facts favorably to the nonmoving party and grants the nonmoving party all reasonable inferences in its favor.  *Bagley v. Blagojevich,* 646 F.3d 378, 388 (7th Cir. 2011) (quoting *Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010)).

### *1. Count I: Class Action Claims*

Pierre alleges that Midland's letter violates the FDCPA because it falsely represents the character and legal status of the debt, 15 USC § 1692e(2), it is a deceptive communication, 15 USC § 1692e(10), and because Midland's use of the letter was an unfair or unconscionable means to attempt to collect a debt, 15 USC § 1692f.  To prevail on her Motion as to Count I, Pierre need only prove that the class is entitled to summary judgment on any one of these bases.  Because the Court finds that she so prevails on Section 1692e(10), the Court devotes its analysis to that issue.

To establish a *prima facie* case under the FDCPA, a plaintiff must prove: she is a natural person or "consumer" who is harmed by violations of the FDCPA; the debt arises from a transaction entered for personal, family, or household purposes; the defendant is a debt

collector; and the defendant has violated a provision of the FDCPA. *Pantoja I,* 78 F.Supp.3d at 745 (citation omitted). Here, Pierre has shown there is no genuine issue of material fact as to whether she is a consumer who accrued her debt from a transaction entered into for personal, family, or household purposes (*see above,* at Part II.A), and that the defendant is a debt collector. (Def.'s Resps. to Pl.'s SOF ¶ 6.) Accordingly, the Court need only consider whether Pierre has shown an FDCPA violation as a matter of law.

In Section 1692e cases, the plaintiff proves a violation by showing that the debt collection language is misleading from the perspective of an unsophisticated consumer. *McMahon v. LVNV Funding, LLC,* 744 F.3d 1010, 1019-20 (7th Cir. 2014). The unsophisticated consumer is "uninformed, naïve, and trusting, but possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Williams v. OSI Educ. Servs., Inc.,* 505 F.3d 675, 678 (7th Cir. 2007) (citations omitted) (internal quotation marks omitted). Whether collection language would confuse an unsophisticated consumer is an objective test. *Id.* at 677-78. Plaintiffs in Section 1692e cases may prevail by showing that the language is misleading or confusing on its face. When they cannot show that the language is plainly misleading, plaintiffs can still prevail by producing extrinsic evidence (such as consumer surveys) to demonstrate that unsophisticated consumers do in fact find the

language misleading or deceptive. *Lox v. CDA, Ltd.,* 689 F.3d 818, 822 (7th Cir. 2012) (citing *Ruth v. Triumph P'ships,* 577 F.3d 790, 801 (7th Cir. 2009)). Finally, plaintiffs must show that the misleading language is material. *Lox,* 689 F.3d at 826 (citing *Hahn v. Triumph P'ships,* 557 F.3d 755, 757-58 (7th Cir. 2009)).

Pierre levies several arguments for how the dunning letter is impermissibly misleading. One argument in particular persuades the Court. When Midland sent Pierre the dunning letter in September 2015, the statute of limitations on any debt collection action had passed. 735 ILCS 5/13-205. Pierre thus bore no legal responsibility to pay that stale debt and could face no legal jeopardy whatsoever if she refused to pay it. However, under Illinois law, had Pierre made a partial payment or promised to repay that debt, she could have revived the statute of limitations and subjected herself to the debt obligation anew. *Pantoja I,* 78 F.Supp.3d at 746 (*Ross v. St. Clair Foundry Corp.,* 271 Ill. App. 271, 273 (Ill. App. Ct. 1933)). Pierre argues that because the letter failed to warn of this possibility, the letter is misleading as a matter of law. The Court agrees.

The parties do not dispute that Midland's letter never warns of the possibility that certain actions could breathe new life into comatose debt. Instead, the parties argue at length over whether this omission even matters. Put more finely: Pierre says such an omission is fatal for Midland's FDCPA defense; Midland argues that the FDCPA does not require debt collectors to warn of the potential danger of revival, and so the omission is of no moment. Midland has some

authority for its argument, but that authority is not controlling here and anyway runs contrary to an explicit ruling by the Seventh Circuit.

Midland leans heavily on a District of Kansas case in which its argument prevailed. In *Boedicker v. Midland Credit Mgmt., Inc.*, 227 F.Supp.3d 1235, 1236 (D. Kan. 2016), the plaintiff claimed that a Midland dunning letter violated the FDCPA by failing to warn that under Kansas law, a partial payment toward stale debt could renew the statute of limitations. The *Boedicker* court awarded Midland summary judgment, concluding that the FDCPA did not require such a warning. *Boedicker,* 227 F.Supp.3d at 1241-42. But there are some problems with Midland's proposed application of that ruling to this case. First, the *Boedicker* court read *Pantoja I* differently than the Seventh Circuit did on appeal. *Boedicker* took care to distinguish *Pantoja I,* but later concluded (in language that Midland now borrows) that "[n]o case has determined that a debt collector must warn of a potential revival of a time-barred claim." *Id.* at 1241; Def.'s Resp. at 5. But two years earlier, *Pantoja I* determined just that. *Pantoja I* found a similar dunning letter deceptive under the FDCPA and observed:

> Upon receipt of the letter the only reasonable conclusion that an unsophisticated consumer (or any consumer) could reach is that defendant was seeking to collect on a legally enforceable debt, even if defendant indicated that it chose not to sue**. Nor would a consumer, sophisticated or otherwise, likely know that a partial payment would reset the limitations period, making that consumer vulnerable to a suit on the full amount** . . . [Further, the letter is deceptive on its face because it] does not indicate when the debt was incurred, only that "[b]ecause of the age of your debt, we will not sue you for it and we will not report it to any credit reporting agency." The letter is deceptive because it does not tell the consumer that the

- 9 -

> debt is time-barred and defendant cannot sue plaintiff to collect it, rather, it implies that defendant has chosen not to sue. **Nor does it tell plaintiff that the effect of making (or agreeing to make) a partial payment on a time-barred debt is to revive the statute of limitations for enforcing that debt.**

*Pantoja I,* 78 F.Supp.3d at 746 (citing *McMahon,* 744 F.3d at 1021) (emphasis added). Although this Court reads *Pantoja I* as imposing exactly the requirement both *Boedicker* and Midland eschew, *Pantoja II* eliminates any guesswork. In the Seventh Circuit, a debt collector must indeed warn of a potential revival of a time-barred claim:

> We agree with the district court's **two** reasons for finding that the dunning letter here was deceptive. First, the letter does not even hint, let alone make clear to the recipient, that if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations. **Second, the letter did not make clear to the recipient that the law prohibits the collector from suing to collect this old debt. Either is sufficient reason to affirm summary judgment for the plaintiff**.

*Pantoja II,* 852 F.3d at 684 (emphasis added).

Midland next argues that even if a warning against possible revival were required ordinarily, no such warning would be necessary in this case because of Midland's policy "never to revive the statute of limitations after it expires." (Def.'s Resp. at 8 (citing Def.'s SOF ¶ 28, ECF No. 81).) Pierre takes umbrage with this defense on a number of grounds, but the most persuasive of them is that revivals of the statute of limitations are controlled not by Midland's policies, but by operation of law. *See, Pantoja I,* 78 F.Supp.3d at 746. A revival would be a hazard to Pierre, who may face suit by Midland if it changed its policies or by someone else if Midland sold Pierre's

debt to another, less principled collector. Further, the question in FDCPA cases is whether the at-issue language would mislead or deceive an unsophisticated consumer. *McMahon,* 744 F.3d at 1019. An unsophisticated consumer would not know about the dangers of revival (even assuming that Midland's letter adequately advises consumers of the statute of limitations in the first instance), and she would certainly not know about Midland's internal policies. *Cf. Lox v. CDA, Ltd.,* 689 F.3d 818, 825 (7th Cir. 2012) (finding, contrary to collector's contention, that an unsophisticated consumer may well consider dunning letter's discussion of possible fees a threat because consumer would not know of legal procedure dictating that such fees could not be imposed absent collector moving a court to do so).

Midland also relies on *Boedicker* for the proposition that because neither the Consumer Fraud Protection Bureau nor the Federal Trade Commission have determined that such warnings are necessary, Midland is free to omit them. (Def.'s Resp. at 4-6 (citing *Boedicker,* 227 F.Supp.3d at 1240-41).) Specifically, Midland points to: an outline of "proposals under consideration" at the CFPB that suggests that revival warnings might actually compound consumer confusion, rather than dispel it (Def.'s Resp. at 5-6); a consent order entered into between Midland and the CFPB in which the CFPB mandated that Midland use the disclosure language it used in the letter sent to Pierre (Ex. A to Def. Resp., ECF No. 82-1); and an FTC consent decree which did not require revival warnings, despite the FTC's apparent earlier consideration of requiring them in the decree. (Def.'s Resp. at 6

n.10.) Though Midland never says so, it essentially argues that these administrative impressions are entitled to *Chevron* or *Skidmore* deference and should be adhered to. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837 (1984); *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944).

The Court cannot agree. First, the Seventh Circuit's explicit holding—that revival warnings are required—controls here. *Pantoja II,* 852 F.3d at 684. True, the Seventh Circuit did not consider in *Pantoja II* whether the sources Midland cites are entitled to deference. *Pantoja I* and *II* acknowledge the FTC consent decree mentioned here by Midland, but only to distinguish the language mandated therein from the language of the dunning letter *Pantoja* considered. The *Pantoja* cases express no opinion as to the deference, if any, that should be afforded the decree.

However, as Judge Edmond E. Chang points out, several courts in this District have held that the consent decrees from both the FTC and the CFPB to which Midland now points should be afforded no deference. *Harris v. Total Card, Inc.,* No. 12 C 05461, 2013 WL 5221631, at *7 (N.D. Ill. Sept. 16, 2013) (collecting cases); *accord, Richardson v. LVNV Funding, LLC,* No. 16 C 9600, 2017 WL 4921971, at *4 (N.D. Ill. Oct. 31, 2017) (stating that these decrees do not warrant *Chevron* deference). Midland "cites no authority demonstrating that congress gave the FTC or the CFPB rulemaking power under the FDCPA through the filing and settling of lawsuits against debt collectors," and Midland has not explained how or if the CFPB "proposals" it identifies were

ever adopted or endorsed by the CFPB, as opposed to remaining proposals and nothing more. *Harris,* 2013 WL 5221631, at *7 (citing *Vulcan Constr. Materials, L.P. v. Fed. Mine Safety & Health Review Comm'n,* 700 F.3d 297, 315 (7th Cir. 2012)). The Court will not extend deference on this basis to the sources cited by Midland.

As its final argument that it need not include a revival warning in its disclosure, Midland says that in Illinois, a partial payment does not revive the limitations period unless the paying party also makes a new and express promise to pay. (Def.'s Resp. at 5 n.8.) *Pantoja II* dealt with this also. The Seventh Circuit acknowledged that though there is some "room for disagreement" about the scope of Illinois law, that disagreement does not free debt collectors of the requirement to warn about the danger of statute of limitations revival. *Pantoja II,* 852 F.3d at 685. Whether a plaintiff makes a new promise or simply tenders a partial payment, either action puts her in a worse legal position than she would have been in had she done nothing. *Id.* Either she has revived the statute of limitations by her promise, or she has by her payment opened herself up to possible suit in which she would have to challenge the collector's reading of uncertain Illinois law. *Id.*

One further step is required. Pierre must also show that the dunning letter is materially misleading. *Lox v. CDA, Ltd.,* 689 F.3d 818, 822 (7th Cir. 2012). Arguing against materiality, Midland makes much hay of its claim that Pierre "never made any payments, [and] did not do anything different as a result of the letter." (Def.'s Resp.

at 1 n.1.) Midland misses the point. Materiality does not hinge upon whether the plaintiff actually acted in reliance on a confused understanding, but rather whether the misleading letter "has the ability to influence a consumer's decision." *Lox,* 689 F.3d at 827 (quoting *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 942 (7th Cir. 2011)) (internal quotation marks omitted). Such is the case here. A consumer receiving this dunning letter may well choose to pay up or promise to do the same, things she likely would not have done but for her receipt and misunderstanding of the letter. Thus, the letter may "lead to a real injury" — the newly revived vulnerability to suit, especially — and so the letter is materially misleading. *Id.*

In *Pantoja II* and here, the collector's silence about the significant risk of losing the ironclad protection of the statute of limitations renders the letter misleading and deceptive as a matter of law. Pierre and the class members are thus entitled to summary judgment as to liability on Count I.

### *2. Count II: Individual Claims*

In Count II as in Count I, Pierre presses FDCPA claims based on Sections 1692e and 1692f. Her rationale for those claims is different here than in Count I, however, Count II's claims focus on Midland's contested right to charge interest on Pierre's debt. Pierre contends that Midland has no such right, and so the dunning letter's "current balance," which Pierre alleges includes over $1,500 in interest, either falsely represents the debt amount (violating Section 1692e) or reflects Midland's attempt to collect an amount not expressly

authorized by agreement or permitted by law (violating Section 1692f). (SAC ¶¶ 31-45.)

However, as the Court has already determined that the class Pierre represents is entitled to summary judgment as to liability in Count I, and Counts I and II are both premised upon violations of the FDCPA, the Court need not address the alternative arguments for individual relief Pierre raises in Count II. Everyone in the class is entitled to summary judgment on liability because they received the FDCPA-violative letter. Pierre also received the letter, so she is entitled to summary judgment on liability as well. Nothing more is needed.

### III. CONCLUSION

For the reasons stated herein, Defendant Midland's Motion to Strike is denied. Plaintiff Pierre's Motion to Summary judgment as to liability on both Counts I and II is granted.

**IT IS SO ORDERED.**

---
Harry D. Leinenweber, Judge
United States District Court

Dated: 2/5/18