**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RENETRICE R. PIERRE, individually and | ) | |
| on behalf of others similarly situated, | ) | |
| Plaintiff, | ) | No. 16 C 2895 |
| | ) | |
| v. | ) | Judge Leinenweber |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | Magistrate Valdez |
| a Kansas corporation, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESONSE TO 12(b)(1) MOTION TO DISMISS**

**Introduction**

On the eve of trial, after having summary judgment entered against it, Defendant Midland Credit Management, Inc. ("Defendant") argues that Plaintiff Renetrice R. Pierre ("Plaintiff") lacks standing on Count I. This Court already found standing based on reasoning that remains valid. *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019), changes nothing, as it involved a claim that the plaintiff was *un*iformed about disclosures meaningless to that plaintiff. In sharp contrast, the instant case deals with *mis*information, designed to deceive Plaintiff and class members into paying debts for which they have ironclad statute of limitations defenses. Defendant's deception is the sort of concrete harm that the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., was designed to protect against, and Defendants violations give Plaintiff standing to pursue her claims here.

Additionally, Plaintiff has standing on Count I, because it is ancillary to Count II, on which Defendant does not contest standing. Furthermore, the Seventh Circuit already heard a post-*Spokeo* case remarkably similar to this one and did not find a lack of standing. *Pantoja v. Portfolio Recovery Assoc., LLC*, 852 F.3d 679 (7th Cir. 2017). This Court should deny Defendant's Motion.

**Legal Discussion**

I.   **THE SEVENTH CIRCUIT HAS ALREADY RULED ON THE PRIMARY ISSUE IN THIS CASE, THUS ESTABLISHING STANDING.**

It is axiomatic that the Seventh Circuit assesses the standing of litigants in each case, including *Pantoja*, *supra*, the case on which this Court based its summary judgment opinion in this case. *Pierre v. Midland Credit Management, Inc.*, no. 16 C 2895, 2018 WL 723278, at *5, 6 (N.D. Ill. Feb. 5, 2018). Had the plaintiff in *Pantoja* lacked standing, the Seventh Circuit was duty-bound to dismiss the matter, even in the absence of a challenge from a party. *Arbaugh v. Y&H Corp.*, 546

1

U.S. 500, 514 (2006); *Stearnes v. Bauer's Opera House, Inc.*, 3 F.3d 1142, 1144 (7th Cir. 1993). Not only did it not dismiss the case, but, just two years ago and post-*Spokeo*, it affirmed summary judgment in favor of the plaintiff on the same issue on which this Court granted summary judgment in Plaintiff's favor here.

## II. THIS COURT HAS ALREADY RULED ON THIS ISSUE.

Defendant is effectively asking this Court to reconsider its decisions to date, albeit without expressly asking for reconsideration or citing any basis for doing so. Nonetheless, this Court, post-*Spokeo*, already expressly rejected Defendant's standing argument. *Pierre v. Midland Credit Management, Inc.*, no. 16 C 2895, 2017 WL 1427070, at *3-4 (N.D. Ill. Apr. 21, 2017). Additionally, duty-bound to raise and consider its jurisdiction, this Court granted summary judgment in Plaintiff's favor on the same record submitted by Defendant here. *Pierre*, 2018 WL 723278. For all of the reasons espoused by this Court last year, a position widely-held in this District, Plaintiff has standing. *See Marquez v. Weinstein, Pinson & Riley, P.S.*, no. 14 C 739, 2019 WL 1787547, *3-4 (N.D. Ill. Apr. 24, 2019).[1]

## III. REGARDLESS OF PRIOR RULINGS, PLAINTIFF HAS STANDING.

Even if this Court ignores *Pantoja* and ignores its own prior ruling on standing, this Court

---

[1] The *Marquez* court stated: "The problem, however, is that this Court has already decided this [standing] issue. [Defendant] made this same argument in its brief in opposition to the plaintiffs' motion for class certification. In its ruling granting the motion, the Court discussed this argument at some length and rejected it, concluding that the plaintiffs had suffered a concrete harm and that they had standing to assert their FDCPA claims. The Court reached this conclusion in light of both *Spokeo* and two other, more recent Seventh Circuit decisions that interpreted and applied it to standing questions. [Defendant's] most recent brief inexplicably ignores all of this. The firm makes no new arguments as to why the plaintiffs lack standing that were not present in its earlier filing. WPR has not pointed to any 'special circumstance' that would indicate that the law of the case doctrine should not apply and that this Court should reconsider its prior decision. It has not argued that the Court's previous decision was clearly erroneous—indeed, it has ignored that decision entirely, and does not even cite or mention the Court's prior ruling. Nor has [Defendant] contended that there has been an intervening change in the law since then. … The Court concludes, therefore, that its previous ruling is the law of the case, and it will not reconsider that decision. The plaintiffs have standing to assert their FDCPA claims."

should still deny the Motion. The premise of Defendant's Motion, *i.e.*, that this is an "incomplete letter" case like *Casillas*, 926 F.3d 329, is fundamentally flawed. *See* Motion, at p. 1. This is a not an incomplete letter case; it is a deceptive letter case, premised on a letter that appreciably increased class members' risk of exposure, as evidenced by class members paying Defendant after receiving the letters.

Moreover, Defendant's Motion relies heavily on (a) mischaracterizing and misquoting case law and (b) mischaracterizing, and omitting significant portions of, Plaintiff's testimony. When the true facts and law are considered, Plaintiff has shown a particularized and concrete injury establishing Article III standing.

### A. Mischaracterized Case Law.

Defendant argues that "this Court has already recognized that plaintiff is pursuing a mere legal infraction, stating that plaintiff's claimed injury here lacks the 'tangible economic or physical harm that courts often expect.'" *See* Motion, at p. 8 (*quoting Pierre*, 2017 WL 1427070, at * 4). But this Court and the Supreme Court have ruled that "an injury need not be tangible to be concrete." *Pierre*, 2017 WL 1427070, at *4; *Spokeo*, --- U.S. ---, 136 S. Ct. 1540, 1549 (2016) ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). Defendant wrongly argues that actual damages ("tangible harm") are needed for standing, which ignores Supreme Court precedent holding that intangible harm provides standing.

Defendant seeks to impose a new requirement, *i.e.*, that a plaintiff must have suffered actual damages, that is contrary to Supreme Court precedent. That cannot be the holding of *Casillas*, as Defendant argues, notwithstanding the court's declaration of "no harm, no foul." 926 F.3d at 331. The Seventh Circuit held that actual damages are not a precursor to the recovery of statutory

3

damages. *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998) ("It is thus irrelevant whether or not she paid the collection fee.").

**B.      Plaintiff's Actual Testimony.**

Defendant grossly misrepresents Plaintiff's testimony. Some highlights of Defendant's mischaracterizations are as follows:

·      Plaintiff does not claim she contacted defendant after receiving the letter
·      Plaintiff understood that she was not going to be sued by defendant
·      Plaintiff never had any doubt about whether she owed the debt
·      Plaintiff 'understood everything" in the letter

*See* Motion, at p. 7. Plaintiff's actual testimony is quite different.

**1.      Plaintiff contacted Defendant.**

After receiving the offending letter, Plaintiff called Defendant to contest its collection efforts. *See* Transcr. of Dep. of Renetrice R. Pierre ("Pierre Dep.") [condensed transcript is **Exhibit 1** hereto; full version in record at 72-6] at 48:18-23; 119:11-12; 123:20-22.

**2.      Plaintiff feared being sued.**

Plaintiff testified repeatedly that, due to the letter, she feared being sued on the debt. *See e.g.*, Pierre Dep., at 31:12-13 ("I was…also afraid that they would try to, you know, sue me again."); 31:15-18 (Q: Were you afraid that Midland was going to sue you again because they had already sued you once? A: Yes.); 67:3-6 ("I knew I needed representation, because I was unsure what the repercussions of not answering that letter from Midland would be, if they, you know, would sue me again."); 67:17-22 ("I wanted to find out what my rights were as a debtor, and again, having the shell-shock of having a collection agency come out of nowhere and having to go in front of a judge to attest to something I wasn't prepared."); 104:10-13 ("I also did not want to be sued again and possibly lose in court and have to owe somebody seven plus thousand dollars that I knew I did not owe, because that would cause an undue burden…."); 108:20-24; 114:1 (Q: How

4

have you specifically been damaged by the allegations asserted in your amended complaint? A: Well, you know, emotional distress. Q: How? A: Because of the fear of again having a case reopened in the 19th Circuit Court or in a different court because of where I live now…the agitation and anxiety of this possibly finding a way on my credit report…."); 114:9-10 ("if they could sue me again"); 117:2-4 ("I was concerned about Midland suing me for it").

Plaintiff once believed she could not be sued by Defendant. *Id*. at 122-1519 (Q: Was there ever a time that you thought you could not be sued for the Target debt? A: After that, after the 2010 hearing I was like okay, that's done.). But because of the letter at issue here, that solace vanished. *Id*. at 141:5-18 (Q: And then you get this letter in September of 2015, and that letter caused you to think that you could be sued again? A: Yes.).[2]

### 3. Concern about credit report.

Plaintiff was also concerned about the impact on her credit report. *See e.g.*, Pierre Dep., at 34:22-24; 35:1 (if agreement to repay or partial payment, "it will revivify the debt and make – allow Midway [sic] to be able to pursue it in court, report it on credit reports."); 36:10-11 (Plaintiff was concerned about the debt showing on a credit report again); 79:2-12 (Q: Is any part of your case against Midland predicated upon any type of credit reporting? [objection] A: It's not for actual credit reporting. It was for the possibility of it, because I got this new letter, and I was afraid that it would eventually somehow end up on there again, or should I say instead of Target being there, Midland in their place.); 82:16 ("this debt could be reinserted on my credit report.").

---

[2] She also feared that the debt could be transferred to another entity, who could sue her. *Id*. at 84:7-11 ("…it says we won't sue you, but it doesn't say we can sell this to somebody else and they can sue you again if you start, you know, making payments or make an agreement, and that's something people need to know."); 116:16-19 ("Will you send it to somebody else? Will somebody else get it, and then I owe them now what I owed you plus what I owed them now?").

### 4. Whether Plaintiff owed the debt.

Plaintiff testified that she did not think she owed the debt. *See e.g.*, Pierre Dep. at 31:4 ("I don't owe them any money."). But as a non-lawyer, she was wrong on the law. In Illinois, a time-barred debt is still owed. *Killian v. Concert Health Plan*, 742 F.3d 651, 663 (7th Cir. 2013). Her opinion on the law is irrelevant. Even in her mistaken belief, Plaintiff was shaken by the letter into thinking that she may be sued again. *See e.g.*, Pierre Dep., at 104:10-13 ("I also did not want to be sued again and possibly lose in court and have to owe somebody seven plus thousand dollars that I knew I did not owe, because that would cause an undue burden….").

### 5. Concerns about revival of statute of limitations.

Upon receipt of the letter, Plaintiff also had concerns about whether the expired statute of limitations could be started anew. *See e.g.*, Pierre Dep., at 34:22-24; 35:1 ("it will revivify the debt and make – allow Midway [sic] to be able to pursue it in court, report it on credit reports."); 35:4-5 ("they can still be held liable for the full amount that was due before."); 36:6-10 (Plaintiff was concerned about the whole amount becoming due after repayment plan fails).[3]

### 6. Whether Plaintiff understood the letter.

Plaintiff can read. At her deposition, she was handed the letter, which she read and understood the words. *See e.g.*, Pierre Dep., at 113:1-10 ("No, I understand everything. I understood that they were trying to say that they, you know, were trying to work something out, and then there was this stuff on the back about if you live this place and if you live that place, you know, this is your right to whatever, to do, you know, find out what you need to find out before you pay us. I saw a due date. I understood that they wanted payment before too long, so…").

---

[3] Defendant argues that there "was never a risk" that Plaintiff's debt would be revived, *see* Motion, at p. 3, but statute of limitations revivals "are controlled not by Midland's policies, but by operation of law." *Pierre*, 2018 WL 723278, at *5.

That is not the same as understanding the full ramifications of the letter, notwithstanding Defendant's argument that somehow Plaintiff is an all-knowing legal expert. Plaintiff's layman understanding was that she needed to act on the letter or face consequences:

> It's not that I didn't understand. It's that I did understand. I understood that there was some type of – there was a punctuated amount of time in which I had to pursue one of three options, and in my mind I understood without it being said, it wasn't said, but I understood that there could be a consequence or consequences somehow if I didn't take Midland up on one of their three options by the expiration date.

*Id*., at 115:11-20. She also understood that she needed to act by the "due date" set forth in the letter. *Id*., at 117:7 ("…not acting on it by the due date."); 116:4-7 ("That, and also payment due date. That implicated to me that I was obligated somehow to pay on this or pay it in full by a certain time."); 32:23-24) ("The date on the bill or the invoice saying this is when it's due.").

### 7. Damages.

Defendant contends that Plaintiff disclaimed actual damages. *See e.g.*, Motion, at p. 7. A plaintiff's forbearance or inability to establish actual damages does not equate to a lack of standing. *Oloko v. Receivable Recovery Services, LLC*, no. 17 C 7626, 2019 WL 3889587, at * 2 (N.D. Ill. Aug. 19, 2019) (acknowledging *Casillas* but finding standing). Nonetheless, while Plaintiff does not seek actual damages for herself, she plainly seeks actual damages for class members who paid Defendant. *Id*. at 135:15-24; 136:1 (Q: …are you personally seeking actual damages on your own behalf in this lawsuit? [objection] A: No. Q: Are you seeking actual damages on behalf of a class? [objection] A: Yes, I am.).

### C. *Casillas* Does Not Foreclose Plaintiff's Claim.

The crux of *Casillas* was that the plaintiff received an *incomplete* letter, in that it did not state that communications must be in writing. 926 F.3d at 332, 333. *Casillas* found the plaintiff lacked standing because she had no intention of using *any* method of communication related to the

debt. She did not even try to dispute the debt orally, thus showing that the required method of communication was irrelevant, and she never doubted that she owed the amount demanded. *Id*. at 334.

*Casillas* is distinguishable on numerous grounds. First and foremost, the case at hand relates not to an *incomplete* letter (as in *Casillas*), but rather to a *deceptive* letter, one intended to entice action by alleged debtors through the use of deceptive text.[4] As the Seventh Circuit found (and this Court followed), a letter that does not disclose that a partial payment or promise to pay creates a risk of losing an ironclad statute of limitations defense and does not make clear that the law prohibits the debt collector from suing on the debt is *deceptive*, not merely incomplete. *Pantoja*, 852 F.3d at 684; *Pierre*, 2018 WL 723278, at *7 ("the collector's silence about the significant risk of losing the ironclad protection of the statute of limitations renders the letter *misleading and deceptive* as a matter of law.") (emphasis supplied).

*Untershine v. Encore Receivable Management, Inc.*, no. 18-cv-1484, 2019 WL 3766564, at *3 (E.D. Wisc. Aug. 9, 2019), distinguished *Casillas* on a similar basis, *i.e.*, *Casillas* related to a claim of omission without being deceptive. As here, the plaintiffs in *Untershine* alleged "not that they were *un*informed but that they were *mis*informed." *Id*. (emphasis in original). The court found that "[p]rotecting consumers from misinformation is one of the 'concrete interest[s] that Congress sought to protect." *Id*. (*quoting Casillas*, 926 F.3d at 333).[5] "If a consumer is misinformed, rather

---

[4] Defendant also characterizes Plaintiff's letter as merely "missing some information." *See* Motion, at p. 7. As set forth herein and in Plaintiff's summary judgment papers, the letter was replete with outright misrepresentations; it wasn't merely missing the phrase "in writing."

[5] The *Casillas* court also acknowledged that the Supreme Court found standing in a housing discrimination case in which the plaintiff claimed the harm of being lied to because of her race, despite the plaintiff being a "tester" with no intention of buying or renting a home, because "[t]hat was an invasion of the very interest that the Fair Housing Act protects: freedom from racial discrimination in the pursuit of housing." 926 F.3d 329, 338 (*citing Havens Realty Corp., v. Coleman*, 455 U.S. 363, 373 (1982)). Unlike the plaintiff in *Casillas*, Plaintiff here received a deceptive letter, the very practice the FDCPA protects against.

than merely uninformed, the risk of harm is greater." *Id.*; *see also Haddad v. Midland Funding, LLC*, 255 F. Supp. 3d 735, 739-40 (N.D. Ill. 2017) ("The value of receiving truthful information about one's financial affairs—and the ill effects of receiving misleading information—may be hard to quantify, especially where, as here, the plaintiff did not act upon the misinformation. But being lied to in violation of an anti-trickery statute like the FDCPA is a concrete harm nevertheless.").

The *Untershine* court also noted that "*Casillas* did not overrule any prior Seventh Circuit decision." *Id.* That includes *Pantoja*, 852 F.3d 679, on which this Court based its summary judgment ruling, *Pierre*, 2018 WL 723278, and *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

Additionally, as set forth in Section III.B., *supra*, unlike the plaintiff in *Casillas*, Plaintiff here actually reacted to the letter, was concerned about its implications, was fearful of potential consequences, and took actions in response to it. The plaintiff in *Casillas* received a document meaningless to her, which she never would have acted upon. Plaintiff here thought she would be sued by Defendant; thought her credit report would be affected; thought she had a payment deadline; thought if she made a payment, the statute of limitations would be revived; called Defendant out of concern for the potential consequences; and hired a lawyer because she was fearful of those consequences. Unlike the plaintiff in *Casillas*, who was unconcerned, Plaintiff's receipt of Defendant's letter caused her emotional distress, agitation, and anxiety over the potential consequences, all because Defendant was misleading and deceptive. *See* Pierre Dep., at 108:21-24; 109:1-6; *Villalobos v. Meyer Njus Tanick, P.A.*, no. 19 C 545, 2019 WL 3562663, *3 (N.D. Ill. Aug. 5, 2019) (finding standing due to amplified anxiety and confusion); *Boerner v. LVNV Funding, LLC*, 326 F. Supp. 3d 665, 675 (E.D. Wisc. 2018 ("unlike *Spokeo*, here the purported procedural violations are only the premise, not the sum total, of the harm").

9

While Plaintiff, who consulted an attorney about her concerns over the letter and did not pay Defendant, she is one of the lucky ones. At least 1,167 class members paid Defendant after receiving the letter. But even if Plaintiff did not pay, that is hindsight. It does not mean that Defendant's deceptive letter did not cause harm to Plaintiff. Moreover, Defendant glosses over that standing merely requires that a violation "presented an 'appreciable risk of harm' to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (citation omitted). "[B]ecause Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Spokeo*, --- U.S. ---, 136. S. Ct. at 1549. In this case, Congress enacted the FDCPA "to eliminate abusive debt collection practices," 15 U.S.C. 1692(e), and specifically prohibited "any false representation or deceptive means to collect or attempt to collect any debt…." 15 U.S.C. 1692e(10). By its own terms, the FDCPA does not require that Defendant have succeeded in collecting from Plaintiff.

Indeed, if, as Defendant suggests, Plaintiff's failure to pay or agree to pay Defendant were determinative, it begs the question as to why Defendant did not move to dismiss Count II related to an inflated amount demanded. Sure, several cases have found standing in the case of an incorrect amount demanded, *see e.g.*, *Untershine*, 2019 WL 3766564; *Richardson v. Diversified Consultants, Inc.*, no. 17 C 4047, 2019 WL 3216030 (N.D. Ill. July 17, 2019), but the principle is the same: if tangible harm is measured by payment or an actual change in legal position, a plaintiff who received an incorrect demand amount but does not pay would not have standing. Yet, they do. The obvious reason is that Congress established protection from *mis*information as a concrete interest providing standing. In that sense, Counts I and II in this case are indistinguishable.

10

In any event, Defendant succeeded in collecting from at least 1,167 class members.[6] Furthermore, those that opted into payment plans with Defendant (a) revived the statute of limitations by operation of law and (b) are subject to credit reporting on the debt. That scenario is an appreciable increase in the risk of harm that provides standing.

*Casillas* is also distinguishable because it related only to a statutory disclosure requirement. 926 F.3d at 334 ("*the provisions* [emphasis added] of the Fair Debt Collection Practices Act that Madison violated do not protect a consumer's interest in having an opportunity to review and respond to *substantive* [emphasis in original] information …"). The instant case does not relate to required statutory disclosures. The letter was clearly substantive, because it deceptively sought to entice action by Plaintiff, not merely inform her.

Finally, *Casillas* distinguished *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016), because it was a Truth in Lending Act case, and the faulty disclosure there could affect the relationship with the plaintiff going forward. *Casillas*, 926 F.3d at 336. Likewise, Defendant's letter here could affect its relationship with Plaintiff and other debtors going forward. The Seventh Circuit further distinguished *Strubel* because the plaintiff in *Casillas* already knew she would not dispute her debt when she received her letter, *id*. at 336-37, whereas here, Plaintiff had no such

---

[6] Though this Court acknowledged that Plaintiff alleges several bases on which to hold Defendant liable in this case, and on which Plaintiff moved for summary judgment, this Court granted Plaintiff's summary judgment motion only on the basis of Defendant's failure to warn of a potential revival of the statute of limitations. *Pierre*, 2018 WL 723278, at *3. Though Defendant does not address them, for purposes of this Motion, and because they may be presented at the upcoming trial of this matter, this Court should not overlook the other deceptions by Defendant in its letter that appreciably raised Plaintiff's risk of harm, including failing to disclose the creditor; offering a "discount" that suggests the debt was enforceable; imposing a payment deadline that suggests the debt was enforceable; and stating that recipient's only option was payment by the due date, when non-payment was a viable, and the best, option. Each of those misleading statements increased the risk of harm to Plaintiff and class members. Even Defendant's statement in the letter that "we will not sue you for it" could not allay Plaintiff's concerns and is a misrepresentation, because the "we" in the letter was Defendant, who did not own the debt. The letter offered no solace that Midland Funding, LLC, the debt owner would not (let alone could not) sue Plaintiff.

pre-conceived notion, and her many responses to Defendant's letter show that she took action and the letter invoked legitimate fears and concerns in her.

Whether a plaintiff had a pre-conceived plan of not taking action appears to be important, but even then, inaction is not decisive. In *Lavallee v. Med-1 Solutions, LLC*, --- F.3d ---, 2019 WL 3720875, at *3 (7th Cir. Aug. 8, 2019), the Seventh Circuit found that a plaintiff that did not receive required disclosures and had standing even though she did not act on the lack of disclosure. The court found that "it's reasonable to infer that she would have exercised her statutory rights." *Id*. Plaintiff here took action, thus creating a better argument for standing than in *Lavallee*. Additionally, *Lavallee* highlights the difference between a mere incomplete notice and a lack of disclosure. In the instant case, not only was Defendant's notice non-existent as to potential revival of the statute of limitations and who the creditor was, it was actually deceptive on those points and the other set forth in footnote 9, *supra*.

Defendant's citation to *Elston v. Encore Capital Group, Inc.*, no. 1:18-cv-0071, 2019 WL 3037054 (E.D. Wash. July 11, 2019), is no more convincing. The out-of-jurisdiction court dismissed the case because, distinguishing *Pantoja*, it found revival warning unnecessary because, under Washington law, partial payment does not revive the statute of limitations. 2019 WL 3037054, at *6. The court there also found that the plaintiff did not claim to be misled by the letter, did not allege that she was confused by the letter, and did not take any action in response to the letter. *Id*. at *4. None of that is true for Plaintiff here. Furthermore, though the court in *Elston* mentioned that the plaintiff did not pay on the debt, *id*., it does not indicate that was a basis for its ruling. In any event, actual payment is not a requirement for an FDCPA claim (attempts to collect debt are covered) or standing (actual damages not required). As such, *Elston* is inapposite.

12

**IV.     OTHER CLASS MEMBERS PAID DEFENDANT; DISMISSAL IS INAPPROPRIATE.**

If this Court determines that Plaintiff lacks standing because she did not pay Defendant, dismissal is inappropriate, because there are at least 1,167 class members who paid Defendant after receiving the offending letters who can substitute in as class representatives. *See e.g.*, *Johnson v. Midland Career Institute, Inc.*, no. 93 C 1363, 1996 WL 54187, at *3 (N.D. Ill. Feb. 8, 1996) (holding that substitution of class representative is appropriate course of action of named plaintiff's standing is eliminated after certification, because "[o]nce certified, the class has a legal status of its own." (citations omitted); *Chapman v. Wagener Equities, Inc.*, no. 09 C 7299, 2012 WL 6214597, at *8 (N.D. Ill. Dec. 13, 2012) (allowing substitution of class representative for named plaintiff that lacked standing because allowing substitution would serve judicial economy and save everyone time, effort, and resources).

**V.     THIS COURT HAS ANCILLARY JURISDICTION.**

Plaintiff has standing on Count I of the Second Amended Complaint [DE 40] in its own right. But even assuming *arguendo* that she lacks standing on Count I in its own right, she has standing on Count I because it is ancillary to Count II, to which Defendant asserts no standing challenge.

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over *all other claims that are so related to the claims in the action within such original jurisdiction* that they form part of the same case or controversy under Article III of the United States Constitution….

28 U.S.C. § 1367(a) (emphasis supplied). Nothing in subsections (b) or (c) compels this Court to decline.

**A.      Plaintiff Has Standing On Count II, And Count I Is Related.**

Defendant does not contest Plaintiff's standing as to Count II. *See* Motion, at p. 2. Because Plaintiff has standing on Count II, this Court has jurisdiction over <u>all</u> other related claims. 28 U.S.C. § 1367(a). Plaintiff's Count I claim is undoubtedly related to Count II, as this Court already determined as a matter of law, because it is premised on the same letter. *Pierre*, 2018 WL 723278, at *7.

**B.      This Court Should Not Decline Jurisdiction.**

Of the four bases on which this Court could decline jurisdiction over Count I, two are inapplicable, namely that the related Count II raises a novel issue of state law or that this Court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(1), (3). The remaining options, that Count I substantially dominates over Count II or that other compelling reasons exist for declining jurisdiction, are unavailing. Count I does not dominate over Count II, as they are both premised on the same letter. The evidence necessary to prove Plaintiff's claims (*i.e.*, the letter) is the same for each claim. However, this Court has already granted summary judgment as to liability on both counts, so the impending trial is narrowed to damages.

There is no compelling reason to decline jurisdiction. To the contrary, this case has been pending for nearly three and a half years, discovery is complete, this Court certified a class, the class was notified nearly two years ago, Plaintiff incurred nearly $50,000 in class notice costs, this Court already granted summary judgment as to liability, and this matter is set for a jury trial in less than three weeks. Dismissing Count I now would be the epitome of wasteful. It will compel attorneys' fees and costs all over again, impose a burden on a state court, and have wasted this Court's years of time and effort. *See e.g.*, *Cole v. Meeks*, no. 15 C 1292, 2018 WL 4682297, at *9-10 (C.D. Ill. Sept. 28, 2018) (after considering judicial economy, convenience, fairness, and

comity, court retained jurisdiction over pendant claims the court heard over the course of three years because to do otherwise would be a waste of judicial resources and cause a substantial duplication of effort). As such, this Court should not decline jurisdiction.

## Conclusion

For the foregoing reasons, Plaintiff requests that this Court deny Defendant's 12(b)(1) motion to dismiss grant such other relief as this Court deems proper.

RENETRICE R. PIERRE, Plaintiff

By:     /s Paul F. Markoff
        One of Plaintiff's Attorneys

Paul F. Markoff
Karl G. Leinberger
Markoff Leinberger LLC
134 N LaSalle St Ste 1050
Chicago IL 60602
312.726.4162 (p)
312.674.7272 (f)
paul@markleinlaw.com

## CERTIFICATE OF SERVICE

I certify that I served a copy of this *Plaintiff's Response to 12(b)(1) Motion to Dismiss* on the following electronically by using the CM/ECF system on this 20th day of August, 2019:

David M. Schultz (dschultz@hinshawlaw.com)
Todd P. Stelter (tstelter@hinshawlaw.com)
Hinshaw & Culbertson LLP
151 N Franklin St Ste 2500
Chicago IL 60606

s/ Paul F. Markoff
Paul F. Markoff

15