**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RENETRICE R. PIERRE, individually and on behalf of others similarly situated, | ) ) | |
| Plaintiff, | ) ) | No. 16 C 2895 |
| v. | ) ) | Judge Leinenweber |
| MIDLAND CREDIT MANAGEMENT, INC., a Kansas corporation, | ) ) ) | Magistrate Valdez |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO DECERTIFY CLASS**

Plaintiff Renetrice R. Pierre (Plaintiff") submits this response to Defendant Midland Credit Management, Inc.'s ("Defendant") Motion to Decertify [DE 177] ("Motion").

**Introduction**

Nothing has changed. Since February 16, 2017, when Defendant Midland Credit Management, Inc. ("Defendant") filed its opposition to class certification, or even since April 21, 2017, when this Court certified the class in this case, nothing has changed, factually or legally. All of the reasons this Court found justifying certification more than two years ago (and even some this Court did not address) still stand. As such, this Court should deny Defendant's Motion.

**Legal Discussion**

**I. DEFENDANT'S MOTION IS UNTIMELY AND THIS COURT'S CERTIFICATION RULING REMAINS CORRECT AND SOUND.**

Plaintiff Renetrice R. Pierre ("Plaintiff") does not contest that an order granting or denying certification may be altered or amended any time before final judgment. Fed. R. Civ. P. 23(c)(1(C). However, modifications to certification orders "typically occur in response to a significant change in circumstances," and '[i]n the absence of materially changed or clarified circumstances … courts should not condone a series of rearguments on the issues[.]'" *Driver v. AppleIllinois, LLC*, no. 06

1

C 6149, 2012 WL 689169, at *1 (N.D. Ill. Mar. 2, 2012) (*quoting* William B. Rubenstein, Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, vol. 3, § 7:47 (4th ed. 2011)).[1]

Defendant does not raise any new facts, pointing only to Plaintiff's deposition testimony, *see* Motion, at pp. 5-6,[2] which was taken 7 months before, and addressed in, this Court's certification order. *Pierre v. Midland Credit Management, Inc.*, no. 16 C 2895, 2017 WL 1427070 (N.D. Ill. Apr. 21, 2017). Instead, Defendant apparently argues that recent Seventh Circuit opinions have changed the law. *See* Motion, at p. 1 (*citing Casillas v. Madison Ave. Assocs.*, 926 F.3d 329 (7th Cir. 2019), and *Lavallee v. Med-1 Sols., LLC*, --- F. 3d ---, 2019 WL 3720875 (7th Cir. Aug. 8, 2019)). But "*Casillas* did not overrule any prior Seventh Circuit decision." *Untershine v. Encore Receivable Management, Inc.*, no. 18-cv-1484, 2019 WL 3766564, at *3 (E.D. Wisc. Aug. 9, 2019). Neither *Casillas* nor *Lavallee* changed any law in this Circuit. Defendant has not identified a single case relied on by this Court in certifying the class that is not still good law. *Wheeler v. Midland Funding LLC*, no. 15 C 11152, 2018 WL 1820254, at *2 (N.D. Ill. Apr. 24, 2018) (denying renewed attack on standing because the court's initial opinion "remains correct and the reasoning sound for the reasons therein."). As such, there is no reason to entertain an eve-of-trial motion to upend years of pre-trial litigation.

In *In re Sulfuric Acid Antitrust Litig.*, 847 F. Supp. 2d 1079 (N.D. Ill. 2011), the defendant brought a motion to decertify just over two months before a class action trial of an eight year old

---

[1] Citing an out-of-jurisdiction case, Defendant contends that Plaintiff bears the burden of re-establishing a right to certification, even on a motion to decertify. *See* Motion, at p. 3. However, "[i]t is not settled whether plaintiffs or defendants bear the burden of proof on motions for decertification." *Smentek v. Sheriff of Cook County*, no. 09 C 529, 2014 WL 7330792, at *6, n. 17 (citations omitted). Regardless, nothing has changed, so Plaintiff has still met her burden to obtain class certification.

[2] Plaintiff does not concede that Defendant accurately summarizes Plaintiff's deposition testimony, as it certainly does not. The discrepancies are addressed in *Plaintiff's Response to 12(b)(1) Motion to Dismiss* ("12(b)(1) Response") [DE 179], at pp. 4-7, which Plaintiff adopts here so as not to repeat arguments.

2

case. *Id*. at 1083. The court denied the motion because the issues of law and fact raised by the defendants already existed at the time of the certification order, notwithstanding the defendants' argument "that new Seventh Circuit case law now demand[s] a more rigorous analysis of the requirements of Rule 23." *Id*. at 1082 (internal quotation marks omitted). "Despite being aware of these potential problems with [the Court's] ruling, Defendants did not seek to obtain appellate review under Federal Rule of Civil Procedure 12(f)."[3] *Id*. at 1083. The court also found that rescinding certification at such a late stage would prejudice the plaintiffs and that the defendants had multiple opportunities to raise their issues with the district court or the appellate court. *Id*.; *see also In re Urethane Antitrust Litig.*, no. 04-1616-JWL, 2013 WL 2097346, at *1 (D. Kan. May 15, 2013) (collecting cases denying decertification due to prejudice to plaintiffs and class members and denying motion to decertify filed one day before trial without offering any reason why it could not have been filed earlier, finding that reconsideration of certification would severely prejudice the plaintiffs, who prepared for trial at great expense).

Similarly, Defendant here raised its current issues before, and this Court ruled on them. *Pierre*, 2017 WL 1427070, at *3. To be clear, Defendant's primary challenge relates to standing, despite mentioning the Rule 23 certification factors, *see* Motion, at pp. 4-6, which this Court considered and rejected in its class certification opinion. *Pierre*, 2017 WL 1427070, at *4.[4] Defendant did not seek review by the Seventh Circuit and did not, until one week ago, seek reconsideration before this Court. Decertifying a class now would prejudice Plaintiff, who has litigated this matter for more than three years and has undertaken significant trial preparation. It

---

[3] This is likely a mistaken citation, as the relevant rule is Fed. R. Civ. P. 23(f).

[4] Because this Court has already ruled on standing, and for the other reasons stated in it, Plaintiff adopts herein Plaintiff's 12(b)(1) Response. [DE 179].

3

would also prejudice class members, who have been under the impression, for two years, that this case would proceed as a class action, and who may have difficulty pursing individual claims at this date, if even they would be incentivized to do so. *Id.*, at \*10 (acknowledging the obstacles and lack of incentive to bring individual actions).

## II. DEFENDANT MISCHARACTERIZES THIS COURT'S CLASS CERTIFICATION RULING.

Defendant contends that this Court's class certification ruling "was entirely predicated on the concept that because plaintiff and the class were sent letters that sought payment on a time-barred debt and lacked a certain undefined disclosure, that nothing else was required to establish an injury-in-fact." *See* Motion, at p. 3. But Defendant's argument short-changes this Court's analysis. It ignores this Court's acknowledgement that unlawful debt collection demands that create a "risk of real harm" provide standing and that *Spokeo* "does not sweep so widely as to overrule Seventh Circuit decisions affirming the power of Congress to enact statutes creating legal rights, the invasion of which confers standing 'even though no injury would exist without the statute.'" *Pierre*, 2017 WL 1427070, at \*4 (*quoting Mogg v. Jacobs*, no. 15 C 1142, 2016 WL 1029396, at \*5 (S.D. Ill. Mar. 15, 2016)). It also ignores that this Court's ruling was premised on more than a lack of disclosure; it acknowledged that Plaintiff's claim was premised on each letter offering baseless "discounts;" failing to advise that the debts were time-barred; failing to disclose that partial payment would revive the statute of limitations; stating that debtors had three options, all requiring payment; and imposing payment due dates, *id*. at \*7, all of which uniformly increased the risk of harm to class members.

Defendant's argument also ignores both this Court's summary judgment ruling and the Seventh Circuit's affirmance of summary judgment in *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679 (7th Cir. 2017), both of which granted summary judgment on evidence almost

identical to that present here, without finding a lack of standing. *Pierre v. Midland Credit Management, Inc.*, no. 16 C 2895, 2018 WL 723278, at *5, 6 (N.D. Ill. Feb. 5, 2018). As set forth in Plaintiff's 12(b)(1) Response, neither *Casillas* nor *Lavallee* change the fact that Defendant's letters were filled with misrepresentations, rather than merely missing the inconsequential phrase "in writing." Furthermore, neither case overruled any Seventh Circuit precedent on class certification, cited at length by this Court in its class certification ruling. *Pierre*, 2017 WL 1427070. As such, neither case provides any basis to upset this Court's still valid conclusion.

### III. DEFENDANT'S EQUATION OF ACTUAL DAMAGES TO INJURY IN FACT IS STILL FALSE.

Defendant's Motion is premised entirely on one thing: that Plaintiff is not claiming actual damages. It uses the phrases "lack of injury" and "injury-in-fact" but clearly equates them to "actual damages" by pointing to Plaintiff's testimony that she is not seeking actual damages for herself. *See* Motion, at pp. 5-6. As mentioned, and as more fully addressed in Plaintiff's 12(b)(1) Response, Defendant mischaracterizes Plaintiff's testimony, but it is correct that Plaintiff is not *seeking* actual damages for herself. But, as this Court and the Supreme Court acknowledged, actual damages are not the only way to satisfy the injury-in-fact requirement. *Pierre*, 2017 WL 1427070, at *4 (*quoting Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1549 (2016).

Contrary to Defendant's assertion, *see* Motion, at p. 6, the class is ascertainable because it still holds true that Plaintiff and <u>all</u> class members sustained the same injury-in-fact by way of Defendant's deceptive letters, regardless of whether they paid Defendant, because the letters are identical. *Pierre*, 2018 WL 723728, at *7; *Pierre*, 2017 WL 1427070, at *1, 2. Plaintiff's claim is typical because it still holds true that she sustained the same injury-in-fact as <u>all</u> other class members, despite some class members also incurring actual damages. *Pierre*, 2017 WL 1427070, at *7. Class treatment is superior, because it still holds true that it serves the efficiency of

5

adjudicating 68,754 small claims in a single litigation and serves the purpose of addressing unlawful behavior. *Id.* at *10. Common issues predominate because it still holds true that (a) whether Defendant is liable can be determined on a class-wide basis, and of course, this Court already found that Defendant is liable to the class, *Pierre*, 2018 WL 723728, at *7, and (b) damages can be established using common evidence. *See* Section V, *infra*. Defendant seems to misunderstand the applicable legal standard, which is whether its deceptive letters would mislead or deceive consumers, *Pierre*, 2017 WL 1427070, at *10, a determination already made by this Court, *Pierre*, 2018 WL 723728, at *7, rather than making the inquiry of every class member, thus defeating the purpose of Rule 23. *See also Wheeler*, 2018 WL 1820254, at *5 ("In other words, it is the communication (or lack thereof) that holds the allegations of [plaintiff] and the putative class members together. Submission of class-wide evidence…is analogous to similar cases in this District whereby the predominant issue is whether debt collection letters sent by the defendants violated the FDCPA." (citations omitted)).

**IV.  THE FIRST CIRCUIT CASE CITED BY DEFENDANT CHANGES NOTHING.**

Defendant argues that *In re Asacol Antitrust Litig.*, 907 F.3d 42 (1st Cir. 2018), compels decertification of the class here. *See* Motion, at pp. 6-8. Defendant is wrong for several reasons. First, the *In re Asacol* court acknowledged that a different standard applies in the Seventh Circuit. 907 F.3d at 57. Second, *In re Asacol* was not a statutory damages case, but rather a case in which each class member would have had to prove individual damages for alleged antitrust violations under the laws of 22 different states, *id.* at 52-55, *i.e.*, they would have to prove they suffered actual damages even to be included in the class. *In re Asacol* is inapposite to a statutory damages case. The distinction was noted by the Fourth Circuit, which upheld standing and class certification in a Telephone Consumer Protection Act ("TCPA") case. *Krakauer v. Dish Network,*

*L.L.C.*, 925 F.3d 643 (2019) (finding that the TCPA recognized a cognizable constitutional injury protecting particular and concrete interests and that statutory damages calculations can be made largely on common proof, specifically class-wide records, and do not turn on individual evidence). The court concluded,

> At bottom, the advantages of class resolution follow directly from the statute. The statute creates a simple scheme for determining if a violation occurred, whether a defense is available, and what the damages ought to be.

*Id*. at 659.

Third, though the court in *In re Asacol* rejected class certification due to the necessity of assessing individual actual damages, it found that the named plaintiffs had standing, because Article III is not an impediment "to the named plaintiffs' ability to litigate as class representatives materially identical claims by other persons under the same laws under which the named plaintiffs' claims arise." *Id*. at 47, 50.

Fourth, and perhaps most importantly, *In re Asacol* turned on whether all class members suffered an injury, *id*. at 51, which <u>in that case</u> depended on whether they suffered actual damages given the nature of the claim. Here, however, the injury-in-fact is satisfied regardless of actual damages. *See* Section II, *supra*. No need exists to assess whether each class member suffered actual damages, because actual damages are not required to obtain statutory damages under the FDCPA. 15 U.S.C. § 1692k(a)(2). Therefore, unlike *In re Asacol*, in which the proposed class would have undoubtedly included members that did not suffer an injury-in-fact such that inclusion in the class would require individual assessment, 907 F.3d at 51, 54, every class member here suffered an injury-in-fact by getting identical deceptive letters. Even the *In re Asacol* court acknowledged that not all class member claims must be identical, 907 F.3d at 49, so the fact that Plaintiff does not seek actual damages personally is irrelevant. *Pierre*, 2017 WL 1427070, at *7;

*see also Wheeler*, 2018 WL 1920254, at *4 ("while some members may have a basis for greater damages, at a bare minimum they still have the same interests as [plaintiff] and so his representation would be adequate."). The question is, as posed by the *In re Asacol* court, "Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?" 907 F.3d at 49. As this Court has already found, and nothing suggests anything has changed, "Pierre has a clear stake in a successful outcome – she seeks damages for herself and the class – that raises no specter of antagonistic interests." *Pierre*, 2017 WL 1427070, at *9.

### V. PROVING CLASS-WIDE DAMAGES.

This Court ordered that "Plaintiff should explain how they intend to prove class-wide damages at trial." [DE 180]. Unclear from the Order is whether this Court is requesting an explanation as to both statutory and actual damages or just actual damages, so Plaintiff will address both.

#### A. Actual Damages.

Plaintiff starts here, because this issue is largely addressed in the separate *Plaintiff's Response to Defendant's Motion In Limine No. 1* [DE 181], which Plaintiff adopts herein. As set forth in Section III.B. of that response, Plaintiff will present evidence of actual damages using Defendant's records, which include spreadsheets produced in discovery showing class member payments after receiving Defendant's deceptive letter. It is common, objective proof as to actual damages in the form of payments.

#### B. Statutory Damages.

Regardless of whether this Court allows the jury to consider actual damages evidence or whether a jury awards them, this case is still brought on behalf of the 68,754 class members that

are entitled to statutory damages. Plaintiff will present common, objective, class-wide proof supporting each of the factors to be considered "in determining the amount of liability…in any class action." 15 U.S.C. § 1692k(b)(2).

### 1. Frequency and persistence of noncompliance.

Plaintiff intends to prove frequency and persistence by introducing evidence that Defendant sent identical deceptive letters to 68,754 class members over the course of a year and that Defendant used those letters for at least 3 1/2 years. Notwithstanding Defendant's request that Plaintiff be barred from presenting such evidence, *see* Defendant's Motion *In Limine* No. 4 [DE 170], Plaintiff is entitled to present evidence beyond just the Plaintiff's experience. *See* Plaintiff's Response to Defendant's Motion *In Limine* No. 4 [DE 184]. Additionally, Plaintiff will introduce evidence of at least five (5) letters to Plaintiff with the deceptive text. *Id.*, at p. 6.

### 2. Nature of noncompliance.

Similarly, Plaintiff intends to introduce evidence as to the nature of noncompliance in the form of the deceptive letters and this Court's conclusion that the letters were "misleading and deceptive as a matter of law." *Pierre*, 2018 WL 723278, at *7. Because the letters were identical, *see Pierre*, 2017 WL 1427070, at *1, 2, it is common, objective evidence applicable to the entire class.

### 3. Resources of debt collector.

Plaintiff intends to introduce a stipulation filed in this case [DE 145] proving Defendant's net worth to be at least $50,000,000, which will allow the jury to award statutory damages at the maximum $500,000.

### 4. Number of persons adversely affected.

Plaintiff intends to introduce evidence that at least 68,754 people were adversely affected,

9

because that is how many class members to whom Defendant sent its deceptive letters in one year. *Pierre*, 2017 WL 1427070, at *5. Additionally, given Defendant's use of the letters for at least 3 1/2 years, the jury is entitled to use its common sense to conclude that more than 68,754 people were adversely affected. *See e.g.*, Seventh Circuit Pattern Civil Jury Instruction No. 1.11 [DE 161-3, at p. 20]; *see also Standard Oil Co. v. Van Etten*, 107 U.S. 325, 334 (1882) ("The very spirit of trial by jury is that the experience, practical knowledge of affairs, and common sense of jurors, may be appealed to, to mediate the inconsistencies of the evidence, and reconcile the extravagances of opposing theories of the parties.")

### 5. Extent to which noncompliance was intentional.

Plaintiff intends to introduce evidence of intent by way of Defendant's use of the deceptive letters often and over a long period of time. Additionally, Plaintiff intends to introduce evidence that Defendant used a large team of marketing professionals whose goal was to write text that would compel payments from debtors.[5] Included in that tested text are the multiple misrepresentations in the letters at issue in this case.

\*   \*   \*

In another consumer protection statute setting, the *Krakauer* court affirmed a class-wide judgment imposing statutory damages, determined by a jury, using class-wide records, finding that class-wide resolution was appropriate. 925 F.3d at 651, 658-9. As with *Krakauer*, and unlike *In re Asacol*, the instant case involves statutory damages provable to, and assessable by, a

---

[5] This evidence is in the form of deposition testimony from one of Defendant's Rule 30(b)(6) designees, but Defendant has designated that portion of the deposition transcript as confidential. Given the timeline in which this Court required Plaintiff to respond to this Motion, Plaintiff is unable to seek and obtain approval for filing that transcript under seal before filing this response. If the testimony is outcome-determinative for the Motion, Plaintiff requests leave to file the transcript under seal. However, pursuant to the Agreed Confidentiality Order in this case [DE 26], Plaintiff will be able to introduce the testimony to the jury.

jury using common evidence, namely Defendant's own records, and Defendant offers nothing that would prevent a jury from making that appropriate assessment.

## Conclusion

For the foregoing reasons, Plaintiff requests that this Court deny Defendant's motion to decertify the class.

RENETRICE R. PIERRE, Plaintiff

By: /s Paul F. Markoff
One of Plaintiff's Attorneys

Paul F. Markoff
Karl G. Leinberger
Markoff Leinberger LLC
134 N LaSalle St Ste 1050
Chicago IL 60602
312.726.4162 (p)
312.674.7272 (f)
paul@markleinlaw.com

## CERTIFICATE OF SERVICE

I certify that I served a copy of this *Plaintiff's Response to Motion to Decertify Class* on the following electronically by using the CM/ECF system on this 26th day of August, 2019:

David M. Schultz (dschultz@hinshawlaw.com)
Todd P. Stelter (tstelter@hinshawlaw.com)
Hinshaw & Culbertson LLP
151 N Franklin St Ste 2500
Chicago IL 60606

s/ Paul F. Markoff
Paul F. Markoff