IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RENETRICE R. PIERRE,** Individually and on Behalf of others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> **MIDLAND CREDIT MANAGEMENT, INC., a Kansas Corporation,** <br><br> Defendant. | **Case No. 16 C 2895** <br><br> **Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Plaintiff Renetrice Pierre, individually and on behalf of a class, alleges that Defendant sent debt collection letters that violated the Fair Debt Collection Practices Act (FDCPA). Pierre raised two FDCPA claims: (1) a class claim that Defendant falsely represented the status of the debt, used deceptive means to attempt to collect the debt, and used unfair or unconscionable means to attempt to collect the debt; and (2) an individual claim that Defendant falsely represented the amount of Pierre's debt. On February 5, 2018, the Court granted summary judgment as to liability on Count I in favor of Pierre and the class. On July 29, 2019, approximately one month before a jury trial was set to begin in this case, Defendant moved to dismiss Count I on the basis that Pierre lacks standing. Defendant moved in the alternative to

decertify the class. For the reasons stated herein, Defendant's Motion to Dismiss (Dkt. No. 152) and Motion to Decertify Class (Dkt. No. 177) are denied.

## I. BACKGROUND

The Court laid out the factual background of this case in greater detail in its summary judgment opinion, *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2018 WL 723278 (N.D. Ill. Feb. 5, 2018), and will provide only a brief overview of the facts here. Pierre accumulated debt on a credit card account with Target National Bank. She failed to pay off the debt and went into default. Target National Bank sold Pierre's debt to Midland Funding, LLC ("Midland Funding") for which Defendant Midland Credit Management, Inc. ("Midland Credit") is a debt collector.

Midland Credit mailed Pierre a debt collection letter in September of 2015. The letter stated that Pierre had a "current balance" of $7,578.57. (Demand Let., Ex. A to Pl.'s Sec. Am. Compl., Dkt. No. 40-1.) The letter encouraged Pierre to "[a]ct now to maximize your savings and put this debt behind you." (*Id*.) The letter then presented three "options": (1) 40% off the advertised balance if Pierre paid $4,647.14 by a "due date" of October 2, 2015; (2) 20% off if Pierre made 12 monthly payments of $505.23, with the first payment "due" on October 2, 2015; and (3) payments

"as low as $50 per month." (*Id*.) Finally, the letter included the following disclosure:

> The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and payment or non-payment of this debt will not affect your credit score.

(Demand Let.) However, at the time Midland Credit sent the letter, the statute of limitations on a collection action for Pierre's debt had run. *See* 735 ILCS 5/13-205. Thus, it would have been impossible for Midland Funding or Midland Credit to sue Plaintiff to recover the debt in question.

Pierre filed suit in March of 2016. She brought two counts: (1) a putative class claim that Defendant falsely represented the status of the debt, used deceptive means to attempt to collect the debt, and used unfair or unconscionable means to attempt to collect the debt; and (2) an individual claim that Defendant falsely represented the amount of Pierre's debt.

On April 21, 2017, the Court certified a class defined as follows:

> All persons with Illinois addresses to whom Midland Credit Management, Inc. sent, from March 7, 2015 through March 7, 2016, a letter containing the following statement: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, we will not report it to any credit reporting agency, and payment or non-payment will not affect your credit score.

*Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *11 (N.D. Ill. Apr. 21, 2017).

On February 5, 2018, the Court granted summary judgment as to liability on Count I in favor of Pierre and the class. Defendant now moves to dismiss Count I under Federal Rule of Civil Procedure 12(b)(1) for lack of standing or, in the alternative, to decertify the class. The Court will address each in turn.

## II. DISCUSSION

### A. Rule 12(b)(1) Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. If a plaintiff cannot establish standing to sue, dismissal under Rule 12(b)(1) is the appropriate disposition. *American Federation of Government Employees, Local 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999). In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009)). Here, Defendant raises a factual challenge, and contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Id*. In reviewing a factual challenge, the court "may look beyond the pleadings and view any evidence submitted to

determine if subject matter jurisdiction exists." *Id.* As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing the elements of Article III standing. *Silha*, 807 F.3d at 173 (citations omitted).

### B. Standing

Defendant argues that Count I of this case should be dismissed under Rule 12(b)(1) because Pierre and the class lack standing to pursue their claims. To establish Article III standing, a plaintiff must show: "(1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–181 (2000) (citation omitted). In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549.

Defendant contends that Pierre failed to establish that she suffered an injury in fact. Defendant cites to two primary sources in support of that argument: a recent Seventh Circuit case, *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329 (7th Cir. 2019), and Pierre's deposition testimony.

### 1. *Casillas* and Recent Caselaw

In *Casillas,* a debt collector's letter allegedly violated the FDCPA by omitting the required notice that a consumer's dispute of a debt must be in writing. *Casillas*, 926 F.3d at 331. The Seventh Circuit found that the plaintiff lacked standing because she alleged only a "bare procedural violation." *Id.* (citing *Spokeo*, 136 S.Ct. at 1549). Important to the Court's reasoning in *Casillas* was the fact that the plaintiff:

> [D]id not allege that [defendant's] actions harmed or posed any real risk of harm to her interest under the Act. . . . [S]he did not allege that she ever even considered contacting [defendant] . . . She complained only that her notice was missing some information that she did not suggest that she would ever have used.

*Casillas*, 926 F.3d at 334.

Speaking more broadly to standing in FDCPA and other statutory right cases, *Casillas* emphasized that "the fact that Congress has authorized a plaintiff to sue a debt collector who 'fails to comply with any requirement [of the FDCPA]' does not mean that [a plaintiff] has standing." *Id*. at 333 (citing *Spokeo*, 136 S.Ct. at 1549). Article III requires a "concrete injury even in the context of a statutory violation." *Id*. Thus, an FDCPA plaintiff cannot demonstrate standing simply by pointing to a "procedural violation." *Id*. She must show that the violation harmed or presented an appreciable risk of harm to the underlying interest

that Congress sought to protect. *Id.* at 333 (citing *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017)).

However, the case at hand is distinguishable from *Casillas*. First and foremost, this case concerns not an incomplete letter, but a deceptive letter. In its summary judgment opinion, this Court found that Midland Credit's letter was misleading as a matter of law, in violation of 15 U.S.C. § 1692e. *See Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2018 WL 723278, at *4 (N.D. Ill. Feb. 5, 2018). More specifically, the Court held that the letter violated 15 U.S.C. § 1692e(10), which prohibits the use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* at *7. This takes Count I out of the realm of a "bare procedural violation."

The Eastern District of Wisconsin recently made a similar distinction when considering whether a plaintiff who received a deceptive debt collection letter had suffered an injury in fact:

> The court finds . . . *Casillas* distinguishable . . . in that [it] involved claims of omission; the defendants allegedly did not do something they were required to do. That is not the nature of plaintiffs' claims here. They allege not that they were *un*informed but that they were *mis*informed. . . . If a consumer is misinformed, rather than merely uninformed, the risk of harm is greater.

*Untershine v. Encore Receivable Mgmt., Inc.*, No. 18-CV-1484, 2019 WL 3766564, at *3 (E.D. Wis. Aug. 9, 2019). That court found that

- 7 -

"misinformation created an appreciable risk of harm to the plaintiffs." *Id*. at *4. Courts in this District have come to similar conclusions. *See Marlene Sparrow Oloko v. Receivable Recovery Services, LLC*, No. 17-CV-7626, 2019 WL 3889587, at *3 (N.D. Ill. Aug. 19, 2019) (finding injury in fact post-*Casillas* because the letter in question created confusion, presenting an appreciable risk of imminent harm to the interest Congress sought to protect: receiving accurate information about one's debt); *Richardson v. Diversified Consultants, Inc.*, No. 17-CV-4047, 2019 WL 3216030, at *4 (N.D. Ill. July 17, 2019) (finding injury in fact post-*Casillas* because the plaintiff received a debt collection letter that allegedly misrepresented the amount of debt owed—"an injury of the kind Congress sought to protect against through the FDCPA").

Second, *Casillas* concerned a statutory disclosure requirement. Accordingly, the Seventh Circuit emphasized the distinction between an "informational injury" that relates to "substantive information" versus "notice of statutory rights." *See Casillas*, 926 F.3d at 335; *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018) ("An informational injury is concrete if the plaintiff establishes that concealing information impaired her ability to use it for a substantive purpose that the statute envisioned.") The FDCPA violation at issue here was not a mere

failure to inform the recipients of the letter of required statutory disclosures. Rather, it was substantive, as it deceptively sought to entice action by the recipients.

Third, as the *Untershine* opinion observed, *Casillas* "did not overrule any prior Seventh Circuit decision, and the court took pains to distinguish cases that appeared inconsistent." *Untershine*, 2019 WL 3766564, at *9. And *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017), *cert. denied,* 138 S. Ct. 736 (2018), is still binding precedent in the Seventh Circuit. In *Pantoja,* the Seventh Circuit considered whether a similar letter, which attempted to collect a debt barred by the statute of limitations without warning debtors that a payment could revive the debt, was deceptive as a matter of law. The court found that such a letter was deceptive for two reasons: (1) it "does not even hint, let along make clear to the recipient, that if he makes a partial payment or even just a promise to make a partial payment, he risks loss of the otherwise ironclad protection of the statute of limitations," and (2) it "did not make clear to the recipient that the law prohibits the collector from suing to collect this old debt." *Pantoja*, 852 F.3d at 684. *Pantoja* emphasized "the danger" that such a letter presents to its recipients—a danger that "[o]nly the rarest consumer-debtor will recognize." *Id.* at 864. As the court noted, waiving an absolute

defense under the statute of limitations would put the consumer in a "much worse legal position" than she would have been in before making a payment or promising to pay. *Id*. at 865. "Silence about that significant risk of losing the protection of the statute of limitations renders [defendant's] dunning letter misleading and deceptive as a matter of law." *Id*. Though this analysis was in the context of whether the letter was misleading as a matter of law, it is relevant to the injury in fact analysis. The Seventh Circuit has held that misleading a consumer about the possibility of reviving a statute of limitations is a "significant risk" and a "danger." *Id*. at 864-65. This supports the notion that the FDCPA violation in this case harmed or presented an appreciable risk of harm to the underlying interest that Congress sought to protect, as *Casillas* requires. *See Casillas*, 926 F.3d at 333.

### 2. Pierre's Deposition

Defendant contends that Pierre disclaimed any injury in fact under *Spokeo* and *Casillas* because she testified that she "understood she was not going to be sued by defendant"; "knew her debt 'was an old debt' and that she never had any intention of paying it"; "'understood everything' in the letter"; "knew she 'didn't owe the money'"; and that the letter "did not cause her to do anything different than she otherwise would have done." (Def.'s Mot. to Dismiss at 7, Dkt. No. 152.) These characterizations are

misleading. In her deposition, Pierre stated repeatedly that the letter caused her significant fear and confusion about the possibility that Midland Credit would sue her or otherwise try to collect her old debt. (*See, e.g.*, Pierre Dep. at 31:7-13, Ex. A to Pl.'s Resp., Dkt. No. 179-1 ("I have a legal—basically some type of demand saying that I owe them even more money . . . and that it's due as of this day, which I was dismayed about and also afraid that they would try to, you know, sue me again.").) She experienced emotional distress, as she believed Midland Credit could sue her and damage her credit report. (*Id*. at 108:21-109:6 ("Q: How specifically have you been damaged by the allegations asserted in your amended complaint? A: [E]motional distress. Q: How? A: Because of the fear of again having a case reopened in the 19th Circuit or in a different court . . . the agitation and anxiety of this possibly finding a way on my credit report.").) Pierre contacted Midland Credit after receiving the letter to contest its collection efforts. (*Id*. at 48:18-23; 119:11-12; 123:20-22.) Defendant's assertion that Pierre "understood everything in the letter" is particularly misleading. In fact, Pierre testified as follows:

> Q: When you got this letter, did you read the entire thing?
> A: Yeah. Yep, I did.
> Q: Was there anything in this letter that you did not understand?
> A: I didn't understand why they were—why I had this in the first place.
> Q: Okay. Anything else?

```
A: As far as what it says, did I not understand anything?
Q: Right.
A: No, I understood everything. I understood that they
were trying to say that they . . . were trying to work
something out . . . I saw a due date. I understood that
they wanted payment before too long. . . . I was
befuddled as to how to – like how can they come back and
ask me for this – for any money, 50 cents, in regard to
Target National Bank, that account, when it's been –
when the case has been dismissed.
```

(Pierre Dep. at 112:14-114:1.) Read in context, Pierre's comment that she "understood everything" clearly relates back to counsel's question about whether she read the letter and followed the language therein. It is not a concession by Pierre that she was not misled or confused by the letter—quite the opposite. Pierre states that she "understood" the letter to contain a due date for payment, a time by which Midland Credit was demanding payment. Pierre is quite unlike the plaintiff in *Casillas* who had no intention of using the information she was not given. *See Casillas*, 926 F.3d at 334. Thus, Defendant's argument regarding Pierre's deposition is unavailing.

Plaintiffs have demonstrated an injury in fact beyond a mere procedural violation. Protecting consumers from misinformation and misleading representations is one of the concrete interests that Congress sought to protect via the FDCPA. *See Pantoja*, 852 F.3d at 681 (discussing 15 U.S.C. § 1692e). And the violation at issue in Count I certainly presented an appreciable risk of harm to the underlying interest that Congress sought to protect. *Casillas*, 926

F.3d at 333 (citing *Groshek*, 865 F.3d at 887). Because Plaintiffs were misinformed and misled about the status of their debt as a matter of law, as opposed to merely uninformed of procedural rights they had no intention of exercising, as was the case in *Casillas*, the Court finds that Plaintiffs have suffered an injury in fact. Accordingly, the Court finds that Plaintiffs have standing, and Defendant's motion to dismiss is denied.

### C. Motion to Decertify

As a final note on the subject of standing, the Court notes that Defendant's Motion to Dismiss alternatively claimed that Pierre, "Plaintiff," and "Plaintiffs" had not suffered an injury in fact. Thus, the Motion to Dismiss is ambiguous as to whether Defendant was arguing that just Pierre, or Pierre and the entire class, lacked standing. (*Compare* Def.'s Mot. to Dismiss at 2, 12 (seeking "dismissal of the individual and class claims [under Count I]"), *with* at Def.'s Mot. to Dismiss at 11 ("[P]laintiff does not claim that she made or tried to make a partial payment on her debt, or that she ever had any intention of doing so.").) Perhaps Defendant reasoned that if Pierre did not have standing, the entire class action should be dismissed. However, a district court may substitute an alternative representative from the class to serve as the named plaintiff if the named plaintiff's standing is eliminated after certification. *See Randall v. Rolls-Royce Corp.*,

637 F.3d 818, 826 (7th Cir. 2011); *Chapman v. Wagener Equities, Inc.*, No. 09 C 07299, 2012 WL 6214597, at *7 (N.D. Ill. Dec. 13, 2012); *Johnson v. Midland Career Inst.*, No. 93 C 1363, 1996 WL 54187, at *3 (N.D. Ill. Feb. 8, 1996).

Regardless of the ambiguity about the scope of Defendant's standing arguments in its Motion to Dismiss, Defendant later made clear in its Motion to Decertify the Class that it believes the entire class lacks standing. Though the Motion to Decertify purports to challenge the ascertainability, typicality, and superiority of the current certified class, the primary argument in this Motion is that "no class may remain certified that contains members lacking Article III standing." (Def.'s Mot. to Decertify at 2, Dkt. No. 177.) Defendant thus delves back into its argument that many members of the class have not suffered an injury in fact under *Casillas*. Defendant urges that the Court would need to conduct individualized inquiries to confirm whether each member of the class in fact suffered harm as Pierre did. This argument against class standing fails for the same reasons the argument against Pierre's standing did. The letter at issue was misleading and deceptive as a matter of law: a violation of a statutory right that presented an appreciable risk of harm to the recipients. All 68,754 class members who received one of three materially identical versions of the letter at issue thus suffered the injury of being

misled and deceived. The Court will not require individual depositions of every member confirming that they were in fact misled by what the Court already determined at summary judgment to be misleading as a matter of law. *See Pierre*, 2018 WL 723278, at \*4 (finding the letter misleading on its face).

To the extent that the Motion to Certify contains valid arguments regarding the ascertainability, typicality, and superiority of the class, the Court declines to rule on them at this time—though it will address them prior to trial. To the extent that the Motion to Certify merely applies Defendant's injury in fact argument to the class as a whole, it is denied.

### III. CONCLUSION

For the reasons stated herein, Defendant's Motion to Dismiss (Dkt. No. 152) is denied. Defendant's Motion to Decertify Class (Dkt. No. 177) is denied in part and continued in part. The Court will address the remaining Rule 23 arguments and the parties' motions *in limine* at the August 29, 2019 status hearing.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 8/28/19