In the

# United States Court of Appeals

## for the Seventh Circuit

Nos. 19-2993 & 19-3109

RENETRICE R. PIERRE, individually and on
behalf of all others similarly situated,

*Plaintiff-Appellee/
Cross-Appellant*,

*v.*

MIDLAND CREDIT MANAGEMENT, INC.,

*Defendant-Appellant/
Cross-Appellee*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 C 2895 — **Harry D. Leinenweber**, *Judge*.

On Petition for Rehearing and Rehearing En Banc

DECIDED JUNE 8, 2022

Before SYKES, *Chief Judge*, and EASTERBROOK, KANNE, ROVNER, WOOD, HAMILTON, BRENNAN, SCUDDER, ST. EVE, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges*.

Case: 1:16-cv-02895 Document #: 276 Filed: 06/16/22 Page 2 of 19 PageID #:3420
Case: 19-2993     Document: 00714021016     Filed: 06/16/2022     Pages: 19

2                                                          Nos. 19-2993 & 19-3109

SYKES, *Chief Judge*. On consideration of the petition for rehearing and for rehearing en banc filed on April 15, 2022, a majority of judges in active service voted to deny the petition for rehearing en banc. Judges Rovner, Wood, Hamilton and Jackson-Akiwumi voted to grant the petition for rehearing en banc. Accordingly, the petition for rehearing and rehearing en banc is DENIED.

HAMILTON, *Circuit Judge*, joined by ROVNER, WOOD, and JACKSON-AKIWUMI, *Circuit Judges*, dissenting. I respectfully dissent from the denial of rehearing en banc. This case presents an important question on the extent of Congress's power under the Constitution to regulate interstate commerce—its power to authorize private civil remedies for statutory violations that cause intangible but concrete injuries, including emotional distress, fear, and confusion.

Defendant Midland Credit Management violated the rights of plaintiff Pierre and a plaintiff class under the Fair Debt Collection Practices Act in trying to collect so-called "zombie" debts—debts on which Midland knew the statute of limitations had expired. See *Pantoja v. Portfolio Recovery Associates, LLC*, 852 F.3d 679 (7th Cir. 2017) (addressing merits of such claims). Midland tried to revive a debt that had been the subject of a suit against Pierre years earlier, ending in dismissal. Pierre was not fooled into paying on the debt, but she testified that Midland's attempt to revive the debt had caused her emotional distress and anxiety. Anyone who has experienced financial insecurity can easily understand her injuries. A jury awarded Pierre and the class statutory damages of $350,000. The panel reversed, however, finding that Pierre lacked standing even to bring this suit.

The constitutional issue here is whether a plaintiff who proves a violation of the Act in attempting to collect a debt from her can show standing based on injuries that are intangible but quite real. Such injuries may include emotional distress, stress, anxiety, and the distress that can be caused by unlawful attempts to collect consumer debts.

The panel majority said no. Its key holding: "Psychological states induced by a debt collector's letter … fall short."

4                                                          Nos. 19-2993 & 19-3109

*Pierre v. Midland Credit Management, Inc.*, 29 F.4th 934, 939 (7th Cir. 2022). That holding, which followed several recent decisions of this court, has strayed far from the Supreme Court's more nuanced guidance on the power of Congress to authorize standing for statutory violations in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), and *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

I.   *Spokeo and TransUnion*

The *Pierre* majority opinion and the Seventh Circuit cases it followed have erred by painting with too broad a brush. They have failed to give the judgments of Congress the "due respect" the Supreme Court called for in *Spokeo* and *TransUnion*. They have overlooked close historical parallels—from both common law and constitutional law—for remedies for intangible harms caused by many violations of the FDCPA and other consumer-protection statutes.

In *Spokeo*, the defendant was a consumer reporting agency that generated profiles of individual consumers. Plaintiff Robins discovered that his Spokeo profile contained inaccurate information. He sued for an allegedly willful violation of the Fair Credit Reporting Act's requirement to use reasonable procedures to assure maximum possible accuracy of such information. The Supreme Court held that the alleged statutory violation regarding his information was not enough, by itself, to establish the concrete and particularized injury in fact needed for constitutional standing. 578 U.S. at 342–43. The Court remanded for further consideration of standing.

Along the way, the Court said that a plaintiff must allege and prove a "concrete" injury, but the Court also made clear that an intangible injury could be concrete for purposes of

standing. 578 U.S. at 340–41. The key question in *Spokeo* and in cases like Pierre's is when an intangible injury is sufficiently concrete. To answer that, *Spokeo* teaches, "both history and the judgment of Congress play important roles." *Id.* at 340. The Supreme Court told courts to consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and to treat the judgment of Congress as "instructive and important." *Id.* at 341.

*Spokeo* also cited *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992), for the proposition that Congress may elevate to the status of legally cognizable injuries harms that were previously not adequate to support a case. The *Spokeo* Court concluded that a violation of the FCRA's procedural requirements could result in cognizable harm, but memorably warned that a "bare procedural violation," such as a report of an incorrect zip code, would not be enough by itself to establish concrete harm. 578 U.S. at 342.[1]

*Spokeo* left plenty of room for debate about standing under consumer-protection statutes. The Court offered more guidance in *TransUnion LLC v. Ramirez*, another FCRA case. A

---

[1] On remand in *Spokeo*, the Ninth Circuit found that the plaintiff had alleged a sufficiently concrete harm to sue. Giving deference to the judgment of Congress, the Ninth Circuit found that dissemination of false information in consumer reports posed a risk of serious harm and that consumers' interests in accurate information resembled reputational and privacy interests long protected under tort law. 867 F.3d 1108, 1113–15 (9th Cir. 2017). The court also concluded that the alleged inaccuracies regarding plaintiff Robins were neither harmless nor trivial, like the Supreme Court's hypothetical wrong zip code. *Id.* at 1116–17. The Supreme Court denied further review in the case. 138 S. Ct. 931 (2018).

credit reporting agency offered to tell creditors whether particular consumers might be on a government list of suspected terrorists, drug-traffickers, and others with whom business dealings are generally unlawful. Lots of law-abiding Americans share first and last names with people on the government's list, and TransUnion identified such people as "potential matches" for the terrorist list. When plaintiff Ramirez tried to buy a car, his name turned up as a potential match. The dealer refused to sell him the car. Ramirez sued TransUnion on behalf of a class for failing to use reasonable measures to ensure that it distributed accurate information.

As a matter of statute, all class members in *TransUnion* had viable FCRA claims. The issue for the Court was standing under Article III. As in *Spokeo*, the key question was whether the intangible harms claimed by the class members were sufficiently concrete. The Court echoed *Spokeo* in saying that intangible harms close to those traditionally recognized in the law were sufficient, including the loss of a constitutional right. 141 S. Ct. at 2204 (citing freedoms of speech and religion). The Court also repeated that courts must afford "due respect" to Congress's decision to create a private right of action for statutory violations, though without giving Congress a blank check to "transform something that is not remotely harmful into something that is." *Id.* at 2204–05 (citation omitted).

The *TransUnion* Court gave more specific meaning to this abstract guidance in the different ways it actually treated the two subclasses. For one subclass, TransUnion files listed them as "potential matches" for the suspected terrorist list, but TransUnion had never provided that information to any potential creditors during the relevant period. *Id.* at 2209. The Court held that those class members lacked standing. The

undisclosed information had not caused them any harm at all. It was as if, the Court said, a person had written a defamatory letter and then left it in a desk drawer. *Id.* at 2210. The plaintiffs argued that the false information in those files put them at serious risk of having the false information disseminated to creditors in the future, but the Court rejected that theory for standing, at least for a damages claim. *Id.*

The other subclass in *TransUnion* presented an easier question. The misleading information about them was actually sent to third parties. The Court agreed unanimously that those plaintiffs had standing. See 141 S. Ct. at 2208–09. The majority compared the misleading credit reports to the tort of defamation. The Court rejected TransUnion's attempt to distinguish its violations from defamation by arguing that merely "misleading" information was not literally false. The Court explained: "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as a basis for a lawsuit in American courts, we do not require an exact duplicate." *Id.* at 2209. The Court did not insist, however, on proof that members of that subclass had lost out on particular loans or purchases. *Id.*

II. *Intangible but Concrete Injuries Under the FDCPA*

Plaintiff Pierre's claim should easily satisfy the Supreme Court's standing requirements. She proved all elements of an FDCPA claim for a deceptive and unfair practice. She also satisfied the constitutional requirements of *Spokeo* and *TransUnion* by offering evidence of harms that, first, lie close to the heart of the protection Congress reasonably offered consumer debtors in the FDCPA, and second, bear close relationships to harms long recognized under the common law and constitutional law.

A. *The Judgment of Congress*

In enacting the FDCPA, Congress wanted to provide a remedy for consumers subjected to abusive practices. Those included:

> obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

S. Rep. No. 95-382 at 2, as reprinted in 1977 U.S.C.C.A.N. 1695, 1696. In the statutory findings, Congress said abusive practices contributed to personal bankruptcies, marital instability, job losses, and invasions of privacy. 15 U.S.C. § 1692(a). The statutory reference to marital instability and the prohibitions on using threats, obscene language, and harassing calls, see § 1692d, show that Congress recognized how such abusive practices could upset the lives of those targeted by them. See *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 692 (8th Cir. 2017) (making this point in finding FDCPA standing based on mental distress resulting from similar attempt to collect out-of-statute "zombie" debt).

The emotional distress, confusion, and anxiety suffered by Pierre in response to this zombie debt collection effort fit well within the harms that would be expected from many of the abusive practices. That's true regardless of whether the debtor actually made a payment or took some other tangible action in response to them. Standing for Pierre thus fits well within

Nos. 19-2993 & 19-3109 9

Congress's judgments about actionable harms. As the Supreme Court said in *Spokeo*, Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 578 U.S. at 341 (alteration in original), quoting *Lujan*, 504 U.S. at 578.

Judge Ripple made this point in his concurring opinion in *Markakos v. Medicredit, Inc.*, 997 F.3d 778 (7th Cir. 2021), highlighting Congress's judgment about the need to protect consumers from abusive debt collection practices and its choice to rely on private enforcement:

> To say that there is no injury in this economy when a person receives a dunning letter *demanding money that is not owed not only ignores the realities of everyday life, it also ignores the findings of Congress and constitutes a direct affront to a congressional prerogative at the core of the legislative function.* The court's failure to recognize the injury that Congress saw and addressed simply testifies to our failure to appreciate how the people we judicially govern live, or more precisely, it testifies to our failure to defer to the congressional appreciation as to how our fellow citizens live. The Supreme Court's holding in *Spokeo* provides no justification for our embarking on such a precarious course. I fear we have given Congress's judgment too little attention and erected an unnecessary constitutional barrier to enforcement of the FDCPA.

*Id.* at 785 (emphasis added). I agree. And the Supreme Court's later decision in *TransUnion* further reinforced that need for substantial deference to the judgment of Congress.

10                                          Nos. 19-2993 & 19-3109

B.  *Historical Guides from Common Law and Constitutional Law*

Defendant Midland's violation of the FDCPA and the intangible but real harms that Pierre suffered also bear close relationships to those recognized in both the common law and constitutional law. Those close relationships, as the Court taught in *Spokeo* and *TransUnion*, offer strong support for recognizing Pierre's standing here.

1.  *Common-Law Parallels*

Start with the torts of intentional or reckless infliction of emotional distress. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress…." Restatement (Second) of Torts § 46(1) (Am. L. Inst. 1965). Such tort cases often pose issues about what conduct is "extreme and outrageous" and when emotional distress is sufficiently severe. In enacting the FDCPA and its remedy for statutory damages, though, Congress itself outlawed the very conduct that harmed Pierre.

The emotional distress, anxiety, fear, and stress she experienced were foreseeable, even intended, responses to defendant's attempt to collect the zombie debt. Congress told the federal courts to authorize damages for such harms. That choice is well within Congress's legislative power over interstate commerce to go beyond the common law. *Markakos*, 997 F.3d at 785 (Ripple, J., concurring in judgment); *Demarais*, 869 F.3d at 692 (attempt to collect debt not owed caused real and foreseeable mental distress familiar to common law).

The torts of defamation and invasion of privacy and remedies for them also bear close relationships to the FDCPA and

its private right of action. As noted, *TransUnion* invoked the parallel to defamation to find standing for the plaintiffs whose potential listings were sent to potential creditors. 141 S. Ct. at 2209; accord, *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1151–54 (7th Cir. 2022) (FDCPA plaintiffs whose debts were reported without noting they were disputed had standing based on publication of false or misleading information to third parties).

Other FDCPA violations parallel the tort of invasion of privacy, including its branches for intrusion upon seclusion, unreasonable publicity given to a person's private life, and publicity that places a person in a false light before the public, which rarely involve tangible injuries. See Restatement (Second) of Torts § 652A et seq. (Am. L. Inst. 1977); *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1191–93 (10th Cir. 2021) (FDCPA plaintiff had standing based on harms akin to those caused by invasion of privacy in form of intrusion upon seclusion); *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 357 (3d Cir. 2018) (FDCPA plaintiff had standing for harm akin to unreasonable publicity of private life branch of invasion of privacy). In fact, the Restatement (Second) teaches that a person who has established an invasion of privacy is entitled to recover damages for, among other things, "his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion." § 652H(b).

Thus, rather than rejecting standing based on "psychological states" induced by FDCPA violations, we should recognize that, more generally, the common law has long authorized damages for emotional distress in a wide range of cases lacking tangible injury. Section 905 of the Restatement (Second) of Torts (Am. L. Inst. 1979) states that compensatory

damages may be awarded for emotional distress. The comments explain that the principal element of damages in actions for assault and defamation, among other torts, is "frequently the disagreeable emotion experienced by the plaintiff," § 905 cmt. c, and that the "mental distress known as humiliation" may also support a damages award, cmt. d. Section 924 states: "One whose interests of personality have been tortiously invaded is entitled to recover damages for past or prospective (a) bodily harm and emotional distress…." Comment a explains that this rule reaches assault (where no physical contact is made) and insulting conduct amounting to a tort. See also § 623 (emotional distress damages for defamation); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) ("[T]he more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.").

Consider also the difference between the torts of assault and battery with the question of standing in mind. What harm is suffered in an assault that stops short of battery? Not physical harm, but fear and emotional distress. Does that mean a victim of an assault lacks Article III standing to sue in federal court? Of course not. The fear and emotional distress are sufficiently concrete and particularized to support standing. The same should be true here, where Congress made a policy choice to offer vulnerable consumers this protection from abusive and deceptive bullying by debt collectors.

Or consider claims for medical monitoring damages in cases where a person has been exposed to a dangerous toxin but has not yet shown symptoms of disease. The common law in many states has evolved to authorize such damages to

Case: 1:16-cv-02895 Document #: 276 Filed: 06/16/22 Page 13 of 19 PageID #:3431
Case: 19-2993      Document: 00714021016      Filed: 06/16/2022      Pages: 19

Nos. 19-2993 & 19-3109                                                                   13

protect plaintiffs from future harm and to address the anxiety and distress that such exposure can foreseeably cause. See, e.g., *Bower v. Westinghouse Electric Corp.*, 522 S.E.2d 424 (W. Va. 1999) (recognizing claim and collecting cases, including *Bourgeois v. A.P. Green Industries, Inc.*, 716 So. 2d 355 (La. 1998), and *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829 (3d Cir. 1990)).

Further common-law examples abound. To be sure, there has been plenty of room for debate about the requirements for emotional distress damages under the common law, especially in cases alleging only negligence. See, e.g., *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 429–38 (1997) (addressing scope of statutory remedies under Federal Employers' Liability Act for negligent infliction of emotional distress and for medical monitoring based on negligent exposure to asbestos). Those debates do not undermine Article III standing here.

The common law has been much more receptive to such damages in cases of intentional or reckless conduct. Pierre's claim here is for intentional conduct that foreseeably inflicted emotional distress and anxiety upon her. And in any event, *Spokeo* and *TransUnion* make clear that standing under federal statutes is not limited to the precise boundaries of the common law. The "close relationship" does not require "an exact duplicate." *TransUnion*, 141 S. Ct. at 2209. It would be extraordinary to claim that the Constitution restricts Congress's legislative powers to require congruence with the common law. And *Spokeo* and *TransUnion* both rejected that position.

*Spokeo* and *TransUnion* made clear that not every FDCPA violation can support standing. The Act outlaws some "bare procedural violations" that may not cause injury in fact. But a remedy for defendant's effort to pressure or trick Pierre into

paying the zombie debt, inducing fear, anxiety, confusion, and more general emotional distress, fits comfortably with the common law of torts.

### 2. *Constitutional Law Parallels*

The "history and tradition" relevant to standing for intangible injuries under federal statutes are not limited to the common law. *TransUnion*, 141 S. Ct. at 2204. The Constitution protects people from many wrongs that may cause intangible injuries, including emotional distress and humiliation. A plaintiff may not recover damages for the "abstract" value of a constitutional right, *Memphis Comm. School Dist. v. Stachura*, 477 U.S. 299, 308 (1986), but may recover for intangible emotional distress and humiliation caused by constitutional violations.

Our circuit's pattern jury instructions for § 1983 cases reflect this settled law. They tell jurors to consider mental and emotional pain and suffering. Federal Civil Jury Instructions of the Seventh Circuit § 7.26 (2017). Such damages for intangible injuries can be appropriate for denials of free speech, free exercise of religion, or due process of law. See *Carey v. Piphus*, 435 U.S. 247, 264 (1978) (mental and emotional distress constitute compensable injury in § 1983 cases); *Young v. Lane*, 922 F.2d 370, 374 (7th Cir. 1991) (recognizing prisoners could recover damages for denial of free exercise rights if they could show violations of clearly established law); *Williams v. Lane*, 851 F.2d 867, 876 (7th Cir. 1988) (same).

Damages for what the panel majority calls "psychological states" are also available for intrusions on privacy in violation of the Fourth Amendment and for threats of clearly excessive force under the Fourth Amendment. E.g., *Baird v. Renbarger*, 576 F.3d 340 (7th Cir. 2009) (affirming denial of qualified

immunity where officer pointed submachine gun at persons who posed no danger at site of search involving suspected non-violent crime). Humiliating strip searches of prisoners, detainees, and suspects may violate Fourth and/or Eighth Amendment rights under some circumstances, and damages for the intangible humiliation and emotional distress can be appropriate. E.g., *Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) (en banc).

Or consider how nominal damages affect standing in constitutional cases. The Supreme Court held in *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), that where the plaintiff proved completed violations of his First Amendment rights, his request for only nominal damages—without proof of compensatory damages—was sufficient to satisfy the redressability element of Article III standing. The Court made clear that the plaintiff still needed to show an actual injury in the form of a completed violation of his rights, *id.* at 802 n.*, but it's difficult to reconcile our court's approach to standing in Pierre's case with *Uzuegbunam*. If standing had been lacking in *Uzuegbunam* for lack of injury, the Court would have been obliged to order dismissal for lack of standing, regardless of the redressability element.

*Uzuegbunam* provides a good survey of the history and importance of nominal damage awards in the common law and constitutional law going back to the earliest years of the Republic and in English courts. See *id.* at 798–800, discussing, e.g., *Webb v. Portland Mfg. Co.*, 29 F. Cas. 506, 508–09 (C.C. Me. 1838) (Story, J.). The general rule is that nominal damages are available and even presumed where a plaintiff proves a violation of her legal rights. If that's correct under both the common law and constitutional law, it's also difficult to see why

Congress cannot authorize a modest damages remedy under the FDCPA where a plaintiff's statutory rights are violated.[2]

Under the teachings of *Spokeo* and *TransUnion*—giving "due respect" for Congress's judgment and recognizing that Pierre's statutory claim and intangible injuries fit closely in legal history and tradition—Pierre should have standing. Article III, *Spokeo*, and *TransUnion* do not prohibit standing for this statutory claim. The FDCPA civil action is constitutional as applied to a host of violations that cause intangible but real injuries like Pierre's.

---

[2] One path toward more specific guidance for lower federal courts for these problems would be to embrace the distinction between private rights and public rights, at least as regards consumer-protection statutes. Justice Thomas endorsed this analysis in his concurrence in *Spokeo*, 578 U.S. at 344–46, and his dissent in *TransUnion*: "At the time of the founding, whether a court possessed judicial power over an action with no showing of actual damages depended on whether the plaintiff sought to enforce a right held privately by an individual or a duty owed broadly to the community." 141 S. Ct. at 2217. The line between private and public rights could go a long way to reconcile Supreme Court precedents on nominal damages with its recent opinions on standing for intangible injuries. The distinction also offers a clear and manageable line between standing in cases like this one, where Pierre asserts a private right under the statute, and the "universal" standing feared by the *Pierre* majority and the cases it followed. See also *Sierra v. Hallandale Beach*, 996 F.3d 1110, 1138–39 (11th Cir. 2021) (Newsom, J., concurring); William Baude, *Standing in the Shadow of Congress*, 2016 Sup. Ct. Rev. 197, 227–31; John G. Roberts, Jr., *Article III Limits on Statutory Standing*, 42 Duke L.J. 1219, 1226–30 (1993) (recognizing that Congress may expand standing to full extent permitted by Article III but may not dispense with requirement of injury in fact, and arguing further that standing is "an apolitical limitation on judicial power," applying to both liberal and conservative causes).

More fundamental, the idea that intangible harms like emotional distress are not sufficient to support Article III standing is simply wrong—especially where Congress has authorized such claims under a federal statute. We should have granted rehearing en banc because our circuit's law on this issue is out of step with the Supreme Court and places us at the far, most restrictive, end of a range of approaches by different circuits. See *Pierre*, 29 F.4th at 953–55 (Hamilton, J., dissenting). Our recent cases have restricted standing so sharply that we may be close to a tipping point, leaving at least the FDCPA largely neutered in the three states of the Seventh Circuit. Since this court has chosen to deny rehearing en banc and to continue on this course, however, the Supreme Court may need to revisit the subject of Congress's power to authorize standing for such intangible but real and concrete injuries under its statutes regulating commerce.

III. *Case-Specific Arguments*

The Answer to the petition for rehearing asserted several case-specific arguments for denying the petition. These arguments have little merit.

First, the Answer asserted that this case is really about fact-specific application of settled legal principles. Not at all. The *Pierre* opinion summarized recent cases and stated the rule broadly: "psychological states," including emotional distress, cannot support standing under the FDCPA. 29 F.4th at 939. That statement of the law is not "settled," and it leaves no room for factual nuance and distinctions that would let other

plaintiffs pursue claims based on more severe emotional distress or worse invasions of privacy, for example.[3]

Second, the Answer argued that plaintiff Pierre's evidence of emotional distress in her deposition and trial testimony was not specific enough to support standing. On the contrary, Pierre testified in detail about the dunning letter and her reaction. The prospect of a revived $7,000 debt threatened her with financial catastrophe. She was confused and afraid that she might be sued again on this debt. (An earlier suit on the same debt had been dismissed years earlier.) Pierre described her "emotional duress," and she was anxious about the prospect of the cost and hassle of more litigation. She was afraid of repercussions if she did not answer the letter and if she did not accept one of the settlement options. She was also afraid that her credit rating would be hurt. Pierre sought out a lawyer. She had read the statement that Midland would not sue

---

[3] That is exactly how *Pierre* and its supporting cases are being argued and applied in the district courts. District judges are reading *Pierre* and its supporting cases that broadly. See, e.g., *Tataru v. RGS Financial, Inc.*, 2021 WL 1614517 (N.D. Ill. 2021) (Tharp, J.); *Marcano v. Nationwide Credit & Collection, Inc.*, 2021 WL 4523218 (N.D. Ill. 2021) (Aspen, J.); *Schumacher v. Merchants' Credit Guide Co.*, 2021 WL 4080765 (N.D. Ill. 2021) (Lee, J.); *Gordon v. Collection Professionals, Inc.*, 2021 WL 6108916 (C.D. Ill. 2021) (Bruce, J.); *Endres v. UHG I LLC*, 2022 WL 462005 (W.D. Wis. 2022) (Conley, J.); *Choice v. Unifund CCR, LLC*, 2021 WL 2399984 (N.D. Ill. 2021) (Coleman, J.); *Dixon v. Jefferson Capital Systems, LLC*, 2021 WL 5908431 (S.D. Ind. 2021) (Magnus-Stinson, J.); *Patni v. Resurgent Capital Services, L.P.*, 2022 WL 1567069 (N.D. Ill. 2022) (Guzmán, J.) (citing *Pierre*); *Masnak v. Optio Solutions, LLC*, 2022 WL 1102020 (E.D. Wis. 2022) (Stadtmueller, J.) (citing *Pierre*). In several of these cases, and others, the broad arguments against standing based on emotional distress or confusion or other psychological states were made successfully by the same lawyers who told us in the Answer that the *Pierre* holding on standing is fact-specific.

her on the debt, but she worried that Midland could refer the debt to another party who would sue her or hurt her credit rating. Her testimony on these topics appears in her deposition at pages 67, 79, 82, 84, 104, 108–09, 114–17, and 141. At trial, she described her surprise, confusion, and distress when she received the letter claiming she owed more than twice as much on a debt that she thought she had successfully disputed years earlier. Dkt. 262 at 52–73.

More fundamental to the issue of rehearing en banc, though, the *Pierre* majority stated the rule in broad terms. Emotional distress and other "psychological states" can never support standing under the FDCPA. No additional specificity from Pierre could overcome the panel's categorical bar. And again, that is how district courts are understanding and applying *Pierre* and our other recent decisions.

Finally, showing the greatest chutzpah, the Answer argues that Pierre waived reliance on common law analogs, theories, and cases raised for the first time in her petition for rehearing. The *Pierre* majority, however, based its denial of standing entirely on cases issued after oral argument in the case, including the majority's view of the 2021 *TransUnion* decision. Pierre was entitled to respond to the new precedents and reasons offered in the majority opinion. The assertions of waiver are baseless.

Plaintiff Pierre suffered just the sorts of intangible but real injuries—including emotional distress, anxiety, fear, and confusion—that Congress foresaw and for which it enacted statutory remedies. We should have granted rehearing en banc and recognized her standing to pursue those remedies.


CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk of the United States Court of Appeals for the Seventh Circuit